### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **ANGELA ROBINSON, individually** | § | |
| **CLARA BUSBY, as next friend,** | § | |
| **guardian, and parent of and for minors** | § | |
| **L.H. and T.H.; and RACHEL AMBLER** | § | |
| **as independent administrator of, and on** | § | |
| **behalf of ANGELA ROBINSON, minors** | § | |
| **L.H. and T.H., the ESTATE OF SAVION** | § | |
| **VASHON HALL, and SAVIO VASHON** | § | |
| **HALL'S heirs-at-law** | § | |
| | § | |
| **VS.** | § | **NO: 7:21-CV-111-DC** |
| | § | |
| **MIDLAND COUNTY, TEXAS;** | § | |
| **SOLUTA INC.; ADEOLA C. ADESOMI;** | § | |
| **FLOR ESTRADA; TIMOTHY GENE** | § | |
| **FORBUSH, JR.; ESTHER EBELE** | § | |
| **IHEDIWA; LILIAN KERUBO OKERI;** | § | |
| **KELLY V. ROBINS; and** | § | |
| **DANIEL T. STICKEL** | § | |

### MIDLAND COUNTY DEFENDANTS' RULE 12(C) MOTION TO DISMISS

Respectfully submitted,

By:    /s/ R. Layne Rouse
R. LAYNE ROUSE
State Bar No. 24066007
lrouse@shaferfirm.com
MILES NELSON
State Bar No. 14904750
mnelson@shaferfirm.com

**SHAFER, DAVIS, O'LEARY & STOKER**
P.O. Drawer 1552
Odessa, TX 79760-1552
(432) 332-0893
(432) 333-5002 – Facsimile

**ATTORNEYS FOR THE MIDLAND COUNTY
DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this document has been filed via the Court's electronic filing system and, by such, is being served on this 3rd day of September, 2021, on all counsel of record.

__/s/ R. L*ayne Rouse*_____
R. Layne Rouse

TO THE HONORABLE JUDGE OF THE SAID COURT:

COME NOW MIDLAND COUNTY, TEXAS, and DANIEL T. STICKEL (the "Midland County Defendants" or "Defendants") and file this Motion to Dismiss under Rule 12(c) of the Federal Rules of Civil Procedure.  In this lawsuit, Plaintiffs ANGELA ROBINSON, individually, CLARA BUSBY, as next friend, guardian, and parent of and for minors L.H. and T.H.; and RACHEL AMBLER as independent administrator of, and on behalf of ANGELA ROBINSON, minors L.H. and T.H., the ESTATE OF SAVION VASHON HALL, and SAVION VASHON HALL'S heirs-at-law (collectively "Plaintiffs") assert various claims related to an alleged denial of medical care they claim resulted in the death of Savion Vashon Hall ("Hall"), a former inmate with the Midland County jail.  Plaintiffs assert such claims against Soluta, Inc. ("Soluta"), the third-party contractor providing medical services at the Midland County jail, Soluta's six nurses Adeola C. Adesomi, Flore Estrada, Timothy Gene Forbush, Jr., Esther Ebele Ihediwa, Lilian Kerubo Okeri, and Kelly V. Robins (the "defendant nurses"), and the Midland County Defendants.

The Midland County Defendants respectfully request the Court to dismiss all claims filed by Plaintiffs against the Midland County Defendants.  Contrary to Plaintiffs' characterization of the alleged facts, their allegations demonstrate that Officer Daniel T. Stickel responded to Hall's complaints, which defeats a showing of deliberate indifference and does not overcome the defense of qualified immunity.  The alleged facts confirm that any alleged delay in care caused by Stickel did not cause the claimed harm.  The claims against Midland County likewise fail, as Plaintiffs' allegations do not show that any alleged policy or practice was the moving force of the incident or promulgated with deliberate indifference.  The Court should dismiss all claims asserted against these defendants with prejudice and enter a judgment under Rule 54(b). In support hereof, the Midland County Defendants respectively would show the Court as follows:

1

# I.   BACKGROUND

Plaintiffs' claims arise out of the death of a Savion Vashon Hall ("Hall"), a former inmate with the Midland County jail.  Hall was arrested on June 21, 2019, for a drug related offense, and detained at the Midland County Jail.  He was eventually transported to the hospital on July 11, 2019, and he died while under the hospital's care on July 19, 2019 (the "incident").

While in jail, Hall regularly received breathing treatments to treat an underlying medical condition.  Plaintiffs claim that the defendant nurses denied Hall medical care by allegedly falsifying records recording Hall's oxygen levels, purportedly recording normal oxygen levels when Hall's actual oxygen levels may have been substantially lower.  Plaintiffs appear to claim that this prevented treating doctors or other Soluta nurses from properly monitoring Hall's health condition and delayed or completely denied Hall from receiving the medical care he needed, allegedly resulting in Hall's death.

Plaintiffs do not allege that any Midland County employee falsified Hall's medical records or had actual knowledge that this occurred. Instead, Plaintiffs allege that Midland County officer Daniel T. Stickel ("Stickel") allegedly denied or delayed Hall from receiving medical care in one shift during which Hall received three breathing treatments.

According to Plaintiffs, on July 10, 2020, Stickel started his eight-hour shift at about 11:00 pm and concluded his shift about 7:00 am on the morning of July 11, 2020.  *See* Doc. No. 1, ¶ 76. According to Hall's breathing treatment record, Hall received three breathing treatments during Stickel's shift, receiving treatments at or around 12:00 am, 4:00 am, and 7:00 am.  *See* Doc. No. 1, ¶23.

About thirty minutes after Hall completed first breathing treatment (around 12:30 am), Hall approached Stickel and requested to visit medical.  Stickel contacted medical, and medical

informed Stickel that Hall could not return for another breathing treatment for another four hours. *See* Doc. No. 1, ¶ 76.   Stickel informed Hall of medical's response and continued to check on Hall to make sure Hall was breathing.   Stickel told Hall that he would keep an eye on Hall. *See* Doc. No. 1, ¶76.   Plaintiffs appear to claim that Stickel's response violated Hall's right to medical care.

About two hours after Hall received his second breathing treatment (around 6:15 am), Hall approached Stickel again and complained that he was having trouble breathing.   Stickel attempted to call medical, but he did not get a response.   *See* Doc. No. 1, ¶76.   Stickel noted that Hall had an inhaler in his hand and confirmed that the inhaler was not out of medicine.   Doc. No. 1, ¶76.   About forty minutes later, around 6:55 am, Stickel informed his relieving officer (Officer Clark) of Hall's condition and called medical requesting that Hall visit medical.   *See* Doc. No. 1, ¶76.   When medical confirmed it could see Hall, Hall was transported to medical for a third breathing treatment.   *See* Doc. No. 1, ¶76.   Following the third breathing treatment, Hall's oxygen levels were recorded as being low, which led Hall to being transported to the hospital for additional treatment.   *See* Doc. No. 1, ¶ 23, ¶76.   Plaintiffs appear to claim that the alleged forty-minute delay in Hall being seen by medical violated his right to medical care.   As demonstrated below, Plaintiffs' allegations fail to state a claim against the Midland County Defendants.

## II.   STANDARDS

### A.   Rule 12(c) Motion to Dismiss

"Rule 12(c) provides the proper authority for seeking judgment on the pleadings after the pleadings are closed." *Eyer v. Rivera*, SA-17-CV-01212-JKP, 2019 WL 5543030, at *1–2 (W.D. Tex. Oct. 25, 2019) (quoting *Channel Source Inc. v. CTI Indus. Corp.*, No. 3:15-CV-0271-P, 2015 WL 13118198, at *1 (N.D. Tex. Oct. 26, 2015)).   Rule 12(c) states that after the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings.

Fed. R. Civ. P. 12(c).[1]  "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."  *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (internal quotations omitted).

Dismissal for failure to state a claim "turns on the sufficiency of the 'factual allegations' in the complaint."  *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 347 (2014) (per curiam)).  To survive a motion to dismiss on the pleadings, a complaint must provide enough facts to state a claim for relief that is plausible on its face. *Jebaco, Inc. v. Harrah's Operating Co.,* 587 F.3d 314, 318 (5th Cir. 2009).  The complaint must allege more than "labels and conclusions," for example, "a formulaic recitation of the elements of a cause of action will not do," and, finally, "factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The Court "does not strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions."  *Emmons v. Painter*, MO:20-CV-00185-DC, 2021 WL 2832977, at *5 (W.D. Tex. May 23, 2021) (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 361 (5th Cir. 2004) while reviewing claims asserted under § 1983)). Moreover, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."  *Jones v. Gonzales*, MO-12-CV-00005, 2013 WL 12130358, at *5 (W.D. Tex. Feb. 28, 2013) (Counts, J.) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973,

---

[1] "Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and answer, unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply, cross-claim answer, or third-party answer normally will mark the close of the pleadings." *Nortel Networks Ltd. v. Kyocera Wireless Corp.*, CIV. A. 3:02-CV-0032-D, 2002 WL 31114077, at *1 (N.D. Tex. Sept. 20, 2002) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 5012–13 (1990) (footnotes omitted)).  Further, "that under the court's scheduling order there is still time for a party to move for leave to amend does not affect this reasoning." *Id.*

975 (5th Cir. 1995)), *report and recommendation adopted*, MO-12-CV-005, 2013 WL 12131200 (W.D. Tex. Mar. 20, 2013).

### B.    Qualified Immunity

The burden is on Plaintiffs to plead facts capable of rebutting the application of qualified immunity. *Spears v. McCraw*, 20-50406, 2021 WL 3439148, at *1 (5th Cir. Aug. 5, 2021) (internal citations and quotations omitted). "The doctrine of qualified immunity shields government officials from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rutland v. Pepper*, 404 F.3d 921, 923 (5th Cir. 2005) (internal quotations omitted).

"The first step in [the] qualified immunity analysis is determining whether a plaintiff has successfully alleged facts showing the violation of a statutory or constitutional right by state officials." *Rutland*, 404 F.3d at 923.  "If there is no violation, then the inquiry ends." *Id.*  If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A court may rely on either prong of the defense in its analysis. *Id.*

Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Id.*  To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.*  The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal. *Id.*  An official's actions must be judged in light of the circumstances

that confronted him, without the benefit of hindsight. *Id.* (citing *Graham v. Connor,* 490 U.S. 386, 396–97 (1989)). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.*

### C.   Medical Care Claims by Pretrial Detainees.

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001) (internal citation omitted).[2]  Deliberate indifference means that: "(1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates the official subjectively intended that harm to occur." *Id.* at 458–59.

"[A]ctual knowledge is critical to the inquiry. A state actor's failure to alleviate 'a significant risk that he should have perceived but did not' . . . does not rise to the level of deliberate indifference." *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002). Moreover, deliberate indifference "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Upshur Cty.*, 245 F.3d at 459. Instead, deliberate indifference is a "stringent standard of fault." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). Moreover, "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006).

---

[2] The Fourteenth Amendment confers to pretrial detainees the same rights to medical care as those conferred by the Eighth Amendment to convicted prisoners. *Brown v. Bolin*, 500 Fed. Appx. 309, 318 (5th Cir. 2012) (citing *Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996)).

Further, while a delay in providing treatment can establish a claim for relief, to establish a claim, the prisoner must also show the delay in treatment caused substantial harm.  *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) ("The mere delay of medical care can also constitute an Eighth Amendment violation but ***only if*** there has been deliberate indifference that results in substantial harm." (internal quotations and alterations omitted) (emphasis added)); *see, e.g.*, *Grant v. Collins*, 3 F.3d 439 (5th Cir. 1993) (holding "[b]ecause [the prisoner] failed to establish any resulting substantial harm occasioned by the alleged neglect, his claim has no arguable legal basis"); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" (emphasis added)); *see also Flores v. Jaramillo*, 389 Fed. Appx. 393, 395 (5th Cir. 2010) (holding same as to pretrial detainee's Fourteenth Amendment rights).

### D.  Municipal Liability

A municipality such as Ector County may be liable under Section 1983 only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  No vicarious liability exists under § 1983. *City of Canton v. Harris*, 489 U.S. 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983.").

A plaintiff must show all elements of the "*Monell* test," that is: (1) an official policy (2) promulgated by the municipal policymaker (3) that was the moving force behind the violation of a constitutional right.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see also James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009).

An official policy or custom is often defined as:

1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.  A persistent, widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Therefore, a plaintiff basing liability on a county's "custom" must show a pattern of "sufficiently numerous prior incidents" that are both similar and specific, as opposed to only "isolated instances." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

This standard is a stringent one and operates "to prevent a collapse of the municipal liability inquiry into a *respondeat superior* analysis." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. 397, 415 (1997)). "Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation." *Id.* (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 391-92 (1989)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404. A plaintiff meets the culpability showing ***only if*** the municipality promulgated a policy with deliberate indifference to the "known or obvious consequences" that constitutional violations would result. *Id.* at 407.

Similarly, to establish liability under Section 1983 for a failure to train, a plaintiff must demonstrate that (1) the municipality adopted inadequate training, supervision, or hiring procedures, (2) the municipality acted with deliberate indifference in doing so, and (3) the

inadequate policies or procedures directly caused the plaintiff's injury. *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205–07, 103 L.Ed.2d 412 (1989); *Sanders–Burns v. City of Plano,* 594 F.3d 366, 381 (5th Cir. 2010).  Mere negligence or even gross negligence is not enough; "a plaintiff usually must demonstrate a pattern of [constitutional] violations and that the inadequacy of the training [or supervision] is obvious and obviously likely to result in a constitutional violation." *Estate of Davis v. City of N. Richland Hills,* 406 F.3d 375, 381 (5th Cir.2005) (quotation marks omitted).

A "pattern of similar constitutional violations by untrained [or unsupervised] employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of [a claim for] failure to train [or supervise]." *Connick v. Thompson,* 563 U.S. 51, 62 (2011).  Moreover, where training, supervision, or hiring procedures are in place, courts require a plaintiff to demonstrate a failure to institute appropriate changes in training or supervision following a "pattern of similar violations." *See, e.g.*, *Escobar v. City of Houston,* CV 04-1945, 2005 WL 8165227, at *3 (S.D. Tex. Mar. 19, 2005) (*comparing *Howard-Barrow v. City of Haltom City*, 2003 WL 21149661 *3 (N.D. Tex. 2003) (finding dismissal appropriate when complaint did not allege any previous similar incidents) *with Nebout v. City of Hitchcock*, 71 F. Supp. 2d 702, 706 (S.D. Tex. 1999) (denying a motion to dismiss when plaintiffs alleged the failure to institute appropriate changes in the training regimen following a pattern of similar violations)).[3]  Examples of dissimilar incidents are not sufficient to establish a claim.  *Connick*, 563 U.S. at 63 ("Because those incidents are not similar to the violation

---

[3] *See also Yara v. Perryton Indep. Sch. Dist.*, 560 Fed. Appx. 356, 358–60 (5th Cir. 2014) ("Further, the Board could not have made a deliberate choice to disregard constitutional violations stemming from its failure to train or supervise because no violation had occurred in the first two years of the program. There was no pattern of constitutional violations such that the Board would have been more than grossly negligent for failing to train or supervise the high school staff.").

at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation").

### III.     ARGUMENTS STANDARDS

Plaintiffs' claims should be dismissed.  Plaintiffs attempt to "lump" the Midland County Defendants with Soluta and the defendant nurses as if to establish liability through allegations of "group liability".  *See, e.g.*, Doc. No. 1, ¶11 (defining all natural persons as "individual defendants").  But Plaintiffs must establish the personal involvement or causal connection as to each defendant.  Allegations of "group liability" are insufficient to support a claim for relief.  *See Reagan v. Burns*, 3:16-CV-2590-G-BH, 2019 WL 6733023, at *9 (N.D. Tex. Oct. 30, 2019) ("The personal involvement or causal connection of each individual must be demonstrated because allegations of group liability are insufficient to sustain a *Bivens* action against each individual defendant." (citing cases)), *report and recommendation adopted*, 3:16-CV-2590-G (BH), 2019 WL 6729085 (N.D. Tex. Dec. 10, 2019).[4]  The only alleged personal involvement of a Midland County employee involves Daniel T. Stickel and his actions during one eight-hour shift.  As more fully explained below, the factual allegations establish that neither Officer Stickel nor Midland County violated Hall's rights.

### A.     The Court Should Dismiss the Claims Asserted Against Officer Stickel.

A summary dismissal is proper as to the claims asserted against Officer Stickel.  Plaintiffs' claim Stickel should have and could have done more for Hall during his eight-hour shift on July 10 to July 11, 2020.  This is not the correct legal standard.  To establish a claim, Plaintiffs must show "deliberate indifference", which requires allegations that Stickel "refused to treat [Hall],

---

[4] Noting *Bivens* claims are "'in essence' the federal counterpart to § 1983, which applies to state officials acting under color of state law.  *Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 111 (5th Cir. 1993) (citations omitted); "This Circuit thus does not distinguish between *Bivens* and § 1983 claims". *Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017).

ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations and citations omitted). "Deliberate indifference is an extremely high standard to meet." *Id.* (internal citations and quotations omitted). Plaintiffs fails to make such showing here.

### 1.      *Daniel T. Stickel Responded to Hall's Complaints.*

Plaintiffs' allegations establish that Stickel responded to Hall's complaints. Based on Plaintiffs' allegations, Stickel (1) called medical each time Hall requested to see medical; (2) continued to keep a close watch on Hall; (3) confirmed that Hall still had access to his medication; and (4) informed his relieving officer of Hall's condition, which resulted in Hall seeing medical for the third time at the end of Stickel's eight-hour shift. The allegations establish that Stickel *did not* ignore Hall's complaints but responded to them. Stickel *did not* refuse to treat Hall. Hall received treatment three times during Stickel's shift. Plaintiffs' allegations disprove that Stickel acted with deliberate indifference towards Hall.

### 2.      *A Claim that Stickel "Could Have Done More" Fails to State a Claim.*

Despite Stickel's responsiveness, Plaintiffs claim that Stickel should have and could have done more. While Plaintiffs may argue that Stickel did not take the "most prudent course of action, that is not the test for a § 1983 claim." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 527 (5th Cir. 1999). "Should have" or "could have" done more does not state a claim, much less, overcome an assertion of qualified immunity. This, however, is the basis of Plaintiffs' claims against Stickel.

Plaintiffs appear to argue that Stickel should have initiated a medical emergency when Hall came to him during his shift. In support, Plaintiffs latch onto statements from Stickel's report

where, with the benefit of hindsight, Stickel states what he "could have" or "should have" done. In reporting the first encounter with Hall (around 12:30 am), Stickel states "upon recollection, I could have been more persistent to the Special Housing and Medical Staff". Doc. No. 1, ¶76. In reporting the second encounter with Hall (around 6:15 am), Stickel states he was "unsure" if Hall's request constituted a medical emergency, but "[u]pon recollection of the situation . . . I should have guaranteed what the call should have been by contacting medical until they answered". Doc. No. 1, ¶76. In essence, Plaintiffs appear to use Stickel's hindsight as a standard to establish claims asserted under § 1983. This is wrong.

Judging Stickel's actions with the benefit of hindsight is an improper standard. When evaluating alleged constitutional violations asserted under § 1983, "[c]ourts must not judge officers with the 20/20 vision of hindsight." *City & County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 615 (2015). As applied here, using Stickel's thoughts on how to potentially improve his response in the future is akin to using a "remedial measure" to prove culpable conduct, which is improper. *See, e.g.*, Fed. R. Evid. 407; *Higginbotham v. Baxter Intern., Inc.*, 495 F.3d 753, 760 (7th Cir. 2007) (affirming dismissal of complaint, holding that "[d]rawing any inference from this would be incompatible with Fed. R. Evid. 407, which provides that subsequent remedial measures may not be used as evidence of liability."); *see also In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 388 n.13 (S.D.N.Y. 2013) ("I further note that drawing an adverse inference from DTTC's attempts to strengthen Longtop's financial controls would be inconsistent with the policy animating Federal Rule of Evidence 407, which prohibits using subsequent remedial measures as evidence of liability."). Moreover, whether Stickel may have believed after the fact that he could have done more does not show that his earlier actions were constitutionally inadequate. Stickel's admission to being "unsure" of how to respond the second time Hall approached him does not

show a "wanton disregard" for Hall, but that he was unsure of the extent of Hall's need, and that

he chose to rely on (1) knowing that Hall was under medical's care, and (2) medical's advice that

Hall could return for additional treatment only after four to five hours.  This fails to state a claim.

### 3.     *Stickel's Reliance on Medical Advice Disproves Any Claim.*

Stickel's reliance on medical advice defeats Plaintiffs' claims of deliberate indifference.

When Hall approached Stickel a mere thirty minutes after his 12:00 am treatment, medical

informed Stickel that Hall was not eligible to return, and Stickel relied on that statement.  When

Hall approached Stickel after his second breathing treatment, Stickel called medical but did not

reach anyone, but knew that based on medical's earlier statement, Hall was not eligible to return

to medical at the time.  Plaintiffs argue that in those moments, Stickel should have been more

persistent with calling medical or called a medical emergency.  As a non-medical officer, Stickel

knew Hall was receiving medical care and chose to rely on the "advice given to me through the

on-duty nurses".  Doc. No. 1, ¶76.  This fails to state a claim.

Courts in this Circuit reject claims against non-medical officers relying upon the advice of

the medical staff.  *Pinchback v. Leon-Gomez*, 6:15-CV-805-RWS-KNM, 2017 WL 5632444, at

*11 (E.D. Tex. Mar. 7, 2017), *report and recommendation adopted*, 615CV00805RWSKNM,

2017 WL 5634636 (E.D. Tex. Mar. 22, 2017) (holding officers were not deliberately indifferent

when they "did not ignore [the inmate's] medical needs and instead took affirmative steps to

contact medical" and "relied on the medical advice from [the nurse] instead of sending [the inmate]

to the infirmary.").  Stickel, as a "non-medical prison official[,] . . . cannot be held deliberately

indifferent simply because [he allegedly] failed to respond directly to the medical complaints of a

prisoner who was already being treated by the prison doctor".  *Beard v. Bureau of Prisons*, 4:11-

CV-383-Y, 2013 WL 5951160, at *8 n.50 (N.D. Tex. Nov. 7, 2013) (internal quotations omitted,

alterations in original).  "If a prisoner is under the care of medical experts, a non-medical prison official [like Stickel] will generally be justified in believing that the prisoner is in capable hands." *Id.* (internal quotations and citations omitted).  Such is the case here, making a dismissal proper.

### 4.   *Any Alleged Failure to Seek Additional Medical Care Fails to State a Claim.*

Plaintiffs' claim that Stickel failed to seek additional medical care by calling a medical emergency or being more persistent with medical fails to state a claim.  Plaintiffs' allegations establish that Stickel sought additional medical care for Hall, and a failure to seek additional care does not establish a claim under these alleged facts.

Despite Plaintiffs' claim, Plaintiffs' allegations establish that Stickel sought additional care for Hall.  He called medical each time Hall requested to see medical, informed his relieving officer of Hall's condition, and called medical prior to his shift ending to request that Hall see medical earlier than the "4 to 5 hour" time-frame medical had originally recommended.  Contrary to Plaintiffs' argument, Stickel did seek additional medical care for Hall.

Plaintiffs appear to fault Stickel for failing to recognize a medical emergency, when not even medical called a medical emergency when Hall initially arrived for his third breathing treatment.  While Plaintiffs allege that Hall's symptoms included wheezing and trouble breathing, these symptoms were persistent throughout his stay.  *See* Doc. No. 1, ¶ 23.  Even assuming Hall was in a medical emergency, from Stickel's perspective, Hall was under a nurse's care, receiving medical treatment, still had access to his inhaler (medicine), and his symptoms appeared similar to that displayed throughout his stay.  Doc. No. 1, ¶23.

The Fifth Circuit has "long held that the decision whether to provide additional treatment is a classic example of a matter for medical judgment, which fails to give rise to a deliberate-indifference."  *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (rejecting claim that paramedics

should have provided additional care). Moreover, courts refrain from even holding trained medical personnel liable for a failure to provide additional care where the issue turns on the adequacy of the previously provided medical treatment. *See, e.g.*, *In Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001) (reversing denial of summary judgment by district court, holding psychiatrist not liable for failing to provide medical care where inmate expressed suicidal ideations to the psychiatrist, the psychiatrist returned the inmate to his cell after a five-minute examination, and the inmate committed suicide two and a half hours later). If an improper diagnosis by a medical professional does not establish a claim for relief against the medical professional, then neither should the alleged improper diagnosis of a non-medical officer like Stickel, who should be held to a less strict standard than that of the trained professional.

Stickel was aware that Hall had been seen, examined, and diagnosed by medical and had access to his medications. As this Court recently noted,

> [T[he Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs.

*See Sanchez v. Griffis et al*, Cause No. 7:20-cv-0208, ---- W.L. ----- (W.D. Tex. August 20, 2021) (Doc. No. 81, p. 8) (internal citations omitted).[5] While one can always argue more could have been done, this does not show deliberate indifference. A dismissal is proper.

### 5.    *Any Alleged Delay in Medical Care Did Not Cause Substantial Harm.*

A dismissal is proper because any alleged delay in medical care did not cause harm. Again, this is not a case where Hall received no treatment during Stickel's shift. After receiving two breathing treatments, Hall to waited about forty minutes after his request at 6:15 before being

---

[5] For convenience of the Court and the parties, the Midland County Defendants are attaching the opinion as Exhibit "A" hereto.

transported to medical to receive a third treatment.[6]  This short delay in treatment is not evidence of deliberate indifference or tantamount to taking no action under these facts.  *See, e.g.*, *See Schrader v. Ruggles*, 20-11257, 2021 WL 2843848, at *3 (5th Cir. July 7, 2021) (noting the inmate's failure to explain "how the fact that [the defendant] did not evaluate [the inmate] on January 30th—just hours after [the inmate] was treated by a doctor and cleared for incarceration—caused him substantial harm."); *Baldwin v. Dorsey,* 964 F.3d 320, 327–28 (5th Cir. 2020), cert. denied, 141 S. Ct. 1379, 209 L. Ed. 2d 123 (2021) ("Three hours' delay in directly responding to a medical need, at least on the facts alleged here, is not the same as never taking responsive action at all.").

Moreover, the delay is not what allegedly caused Hall the complained of harm.  Plaintiffs allege that Hall's health deteriorated over his entire three week stay.  The alleged harm was *not* the result of an alleged forty-minute delay in seeing medical prior to being transported to the hospital, especially where Hall would spend another week in the hospital before passing.  *See* Doc. No. 1, ¶¶18-19, ¶¶73-75.  These allegations fail to state a claim for relief.

### 6.   *Plaintiffs' Allegations Fail to Overcome an Assertion of Qualified Immunity.*

Dismissal is also proper because Plaintiffs' allegations do not overcome Stickel's defense of qualified immunity.  *See* Doc. No. 25.  Plaintiffs' burden is to "allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper."  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  Plaintiff has not done so here.  Plaintiff's claims should be dismissed.

---

[6] Plaintiffs' allegations refute any claim that a delay in care following the first breathing treatment, when Hall approached Stickel a mere thirty minutes after his last treatment, caused substantial harm.  The allegations establish that Hall successfully received treatment around 4:00 am and returned to his cell without issue.  Doc. No. 1, ¶¶ 23, 76.

**B.      The Court Should Dismiss the Claims Asserted against Midland County.**

The Court should dismiss the claims against Midland County.  Plaintiffs argue Midland County is liable for the following alleged customs or practices: (1) housing inmates too far away from treatment; (2) only calling medical emergencies when an inmate in unconscious or unresponsive; (3) hiring officers with temporary jailer licenses; and (4) understaffing medical personnel.  A summary dismissal is proper because the allegations fail to show that Midland County's policies or customs were the moving force of the violation or implemented with deliberate indifference.

### 1.      As Daniel T. Stickel Should be Dismissed, So Should Midland County.

A summary dismissal is proper as to Midland County because a dismissal is proper as to its officer Stickel.  Plaintiffs' theory is Midland County's policies or practices were the cause of Hall's injuries and death *vis a vis* the actions of its officer Stickel.[7]  As demonstrated above, Stickel did not violate Hall's rights to medical care.  If no underlying constitutional injury is present, the alleged unconstitutional policy or custom is "quite beside the point" and cannot be a basis for municipal liability. *See, e.g.*, *Gonzales v. City of Kerrville, Tex.*, 205 F.3d 1337 (5th Cir. 1999) (quoting *Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (*per curium*)).  Because Stickel's actions did not violate Hall's rights, it follows that Midland County did not violate Hall's constitutional rights, regardless of the alleged custom or policy.  Accordingly, the Court should dismiss the claims against Midland County.

---

[7] Plaintiffs also appear to suggest that Midland County is liable to Plaintiffs because the defendant nurses, though Soluta employees, were Midland County's "agents".  Doc. No. 1, ¶6-11.  This appears to be nothing more than a *respondeat superior* argument, which the Court should reject.

2.      *The Alleged Policies were not the Moving Force of Any Alleged Violation.*

A summary dismissal is also proper as to Midland County because the alleged policies were *not* the moving force of any alleged violation.  The housing of inmates "too far away" from the medical clinic had nothing to do with the incident.  Plaintiffs' allegations confirm Hall arrived at medical to receive breathing treatments many times regardless of his cell location, including the final treatment received prior to his transportation to the hospital.  *See* Doc. No. 1, ¶23, ¶76.  The distance between Hall's cell and medical is irrelevant.

Likewise, the alleged medical emergency policy (only call a medical emergency when an inmate is unconscious) was not the moving force of a violation.  Stickel did not wait until Hall was unconscious to seek medical attention.  *See* Doc. No. 1, ¶76.  While Plaintiffs allege (or argue) that it *could* be dangerous to wait until someone is unconscious before seeking medical attention on their behalf, this is not what happened to Hall.  *See* Doc. No. 1, ¶94.  This is not at issue here.

The alleged "understaffing" of nurses did not cause the alleged violation.  Plaintiffs' allegations fail to show how an understaffing issue caused the defendant nurses to allegedly falsify Hall's medical records.  Moreover, the alleged understaffing policy or any policy related to medical treatment was not attributable to Midland County.  Plaintiffs claim Soluta was under contract to provide medical services at the Midland County jail, and Soluta "as opposed to Midland County . . . took the lead" in developing healthcare related policies.  *See* Doc. No. 1, ¶ 115.  Midland County can be held liable only for the conduct "directly attributable" to it.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). It cannot be liable by *respondeat superior* for the policies of Soluta or the actions of Soluta's employees.  Other than perhaps conclusory allegations, Plaintiffs do not show that the alleged "understaffing" or any policy or practice related to medical treatment is directly attributable to Midland County.

Finally, the allegations fail to show how Stickel's temporary jailer's license caused the alleged violation. Plaintiffs complain that Stickel did not have CPR or first aid training, but Hall's injuries did not result from an alleged failure of Stickel to apply CPR or first aid. Doc. No. 1, ¶93. Plaintiffs seem to suggest that Stickel would have ensured that Hall receive treatment earlier if he had a "normal" license, but the allegations do not support this. A mere thirty minutes after Hall received his 12:00 am treatment on July 10, medical informed Stickel that Hall was not eligible to return for another 4 to 5 hours. After Hall requested to see medical a third time following his second breathing treatment, Stickel saw that Hall was seen by medical within the hour, despite medical's "4 to 5 hour" treatment schedule. The Court should dismiss these claims.

### 2. *Plaintiffs Fail to Point to a Pattern of Similar Violations.*

A dismissal is also proper because the allegations fail to establish a *pattern* of similar violations allegedly caused by any alleged custom or practice. Courts require a pattern of similar violations that "occurred for so long or so frequently" that it "transcends the error made in a single case". *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-51 (5th Cir. 2009). This can only be done by pointing to a county's knowledge of "sufficiently numerous prior incidents" that are both similar and specific, as opposed to only "isolated instances." *Id*; *see, e.g.*, *Fuentes v. Nueces County, Texas*, 689 Fed. Appx. 775, 778 (5th Cir. 2017) (three prior incidents not sufficient); *Jackson v. Valdez*, 3:18-CV-2935-X-BH, 2020 WL 1428775, at *6 (N.D. Tex. Feb. 27, 2020), *report and recommendation adopted*, 3:18-CV-02935-X-BH, 2020 WL 1339923 (N.D. Tex. Mar. 23, 2020) (four prior incidents not sufficient). Plaintiffs' allegations direct the Court to none.

Plaintiffs apparently suggest that Midland County should be held liable for contracting with Soluta to provide medical services. Plaintiffs' allegations fail to show any pattern of past, similar violations by Soluta, the defendant nurses, or any other Soluta employee that would have put

Midland County on notice that Soluta and its employees were allegedly providing inadequate medical services to its inmates but that Midland County chose to continue hiring Soluta anyways. *See Yara v. Perryton Indep. Sch. Dist.*, 560 Fed. Appx. 356, 358–60 (5th Cir. 2014).   While Plaintiffs direct the Court to six previous custodial deaths at the Midland County jail occurring over a fifteen-year period, none of the incidents are similar this incident.  *See* Doc. No. 1, ¶ 95-99. This fails to state a claim.

        Finally, Plaintiffs claim they do not need to show a pattern because the alleged incident itself demonstrates that Midland County ratified the act, citing in support *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).  The Court should reject this argument.  The Fifth Circuit has repeatedly emphasized that *Grandstaff* arose from "extraordinary" facts where an entire police department, including the sheriff, opened fire indiscriminately on a slow-moving pickup truck. *Lansdell v. Miller*, 817 Fed. Appx. 27, 29 (5th Cir. 2020) (holding *Grandstaff* is "limited" to "extreme factual situations").  Here, the defendant nurses are not alleged to be Midland County employees, there is no allegation that *any* Midland County employee participated in or approved the alleged conduct, much less a policymaker like the sheriff.  This is not akin to an "entire department" of Midland County, including its sheriff, simultaneously engaging in an obvious violation like in *Grandstaff*.  The Court should reject this argument. The claims against Midland County should be dismissed.