# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| CRUZ E. SANCHEZ | § | |
| | § | |
| vs. | § | NO:  MO:20-CV-00208-DC |
| | § | |
| MIKE GRIFFIS, (FNU) MANCHA, STEVEN | § | |
| MCNEIL, (FNU) DURHAM, JESSE | § | |
| ABALOS, T. ROACH, M. COX, S. | § | |
| SEIBOLT, T. WARNER, I. GALVAN, (FNU) | § | |
| HENDRICKS, (FNU) BODWELL, T.J. | § | |
| POWELL, JESSICA ALLEN, JACKIE | § | |
| (LNU) (A.K.A. JACKIE NUNEZ) | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Cruz E. Sanchez seeks "$3.5 million" in monetary damages under 42 U.S.C. §1983 for "pain & suffering" arising from a disagreement with the fifteen (15) named Ector County Defendants[1] over his diabetic meal plan while he was a pretrial detainee in the Ector County Detention Center (ECDC). [docket number 1 at 7]. Fourteen of the Ector County Defendants filed a Motion to Dismiss on November 23, 2020. [docket number 54]. On November 25, 2020, the Court issued an Order that the fourteen Ector County Defendants' Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss would be treated as a Motion for Summary Judgment pursuant to Rule 56 and gave both sides an opportunity to submit additional evidence in support. [docket number 55]. On December 9, 2020, Plaintiff filed his Response to the fourteen Ector County Defendants' Motion to Dismiss. [docket number 57]. On December 29, 2020, the fourteen Ector County Defendants filed a 229-page Supplement in Support of their Converted Motion for Summary Judgment. [docket number 59]. On January 8, 2021, Plaintiff

---

[1] Hereinafter the Ector County Defendants.

filed his Response to the fourteen Ector County Defendants' Supplement to their Motion for Summary Judgment. [docket number 60].

Because of problems with service on Defendant Jackie LNU (a.k.a. Jackie Nunez), counsel just entered an answer on her behalf on July 16, 2021, and amended that answer on July 20, 2021.[2] [docket numbers 74, & 78, respectively]. Therein, Jackie Nunez adopted the Motion to Dismiss of the fourteen other Ector County Defendants, and later their Motion for Summary Judgment as well.[3] [*See* docket numbers 78, & 80, respectively]. Plaintiff never responded to Jackie Nunez's adoption of both of the fourteen other Ector County Defendants' Motion to Dismiss and Motion for Summary Judgment, and the time in which to do so has passed. [*See generally* docket]. Therefore, this case is ripe for a decision. After due consideration, the Court will grant the fifteen Ector County Defendants' Motion for Summary Judgment.

## I.      §1983 claims in general

Section 1983 creates a private right of action to redress the violation of federal law by those acting under color of state law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

---

[2] On October 10, 2020, summons was issued by mail as to Defendant Jackie LNU at the address provided by Plaintiff. [docket number 23]. On October 19, 2020, the summons was returned to the Clerk's Office as delivered, although not directly to Defendant Jackie LNU. [*See* docket number 44]. Defendant Jackie LNU never responded to this Court's Order for Service. [*See generally* docket]. The Court then ordered the fourteen Ector County Defendants to supply the Court with the real name of Jackie LNU. [docket number 66]. The fourteen Ector County Defendants responded that her name was Jaky Nunez. [docket number 67]. The Court then ordered she be personally served. [docket number 68]. Jaky Nunez (a.k.a. Jackie Nunez) was personally served on June 15, 2021 by U.S. Marshals, which lead directly to these answers. [docket numbers 69, 74, & 78, respectively].

[3] Inexplicably, Defendant Jackie Nunez filed a Motion to Join and Adopt Summary Judgment Motion instead of just a response to the Court's order for clarification. [docket number 80]. Nonetheless, this Court now grants Defendant Jackie Nunez's Motion to Join and Adopt Summary Judgment Motion. [*Id.*].

> privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured.

42 U.S.C. §1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985); *Carbonell v. La. Dep't of Health & Human Resources*, 772 F.2d 185, 188 (5th Cir. 1985).

To prevail on a §1983 claim, the plaintiff must prove that a person acting under color of state law deprived him of a right secured by the Constitution or laws of the United States. *See* 42 U.S.C. §1983; *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984). Plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986); *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985).

The plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence. *See Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels*, 474 U.S. at 328; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The negligent deprivation of life, liberty, or property is not a constitutional violation. *See Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992); *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989); *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir. 1988); *Young*, 775 F.2d at 1353. Moreover, to hold a defendant liable under §1983,

the plaintiff must adduce facts demonstrating the defendant's participation in the alleged wrong. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Jacquez*, 801 F.2d at 793.

## II. *Pro se* **pleadings**

Allegations made in a *pro se* complaint are held "to a less stringent standard than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). To hold a *pro se* plaintiff to strict compliance "would be inequitable" as courts would punish a *pro se* plaintiff "for lacking the linguistic and analytical skills of a trained lawyer." *Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002). To avoid such a result, "courts have adopted the rule that a *pro se* plaintiff's pleadings are liberally construed." *Id.* Even though pleadings by a *pro se* litigant are held to a less stringent standard, courts must be able to draw the reasonable inference from the pleadings that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007))). Courts should not dismiss a *pro se* complaint without "providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff has pled his best case." *Hale*, 642 F.3d at 503. This Court finds having filed an original Complaint, and a Response to this Court's Order for Clarification, Plaintiff has pleaded his best case.

## III. **Standard of review**

The Ector County Defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. [docket number 59]. Under this rule, a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.*

If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts showing the existence of a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A reviewing court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment[.]" *Smith v. Regional Trans. Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate in any case where the critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party moving for summary judgment bears the initial burden of identifying those portions of the summary judgment evidence which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the non-moving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Once the moving party has satisfied this burden,

the non-moving party must go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file, set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986).

Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little*, 37 F.3d at 1075 (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322; *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir. 1997). "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the non-movant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953

F.2d 909, 915–16 & n. 7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## IV. Legal standards and analysis

Plaintiff's complaint ultimately concerns his allegations of deliberate indifference to his serious medical needs. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997); *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985); *Norton*, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. *Graves v. Hampton*, 1 F.3d 315, 319–20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

In *Domino v. TDCJ-ID*, 239 F.3d 752 (5th Cir. 2001), an inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

*Domino*, 239 F.3d at 756; *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

## V.     Deliberate indifference standard

As an initial matter, Plaintiff's claim that he was denied adequate medical care through the mechanism of food while in ECDC implicate both the Fourteenth Amendment and the Eighth Amendment to the United States Constitution. In that respect, pretrial detainees ordinarily are

protected by the Due Process Clause of the Fourteenth Amendment, which dictates that "a pretrial detainee may not be punished." *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). Inmates who have been convicted and sentenced to imprisonment, by contrast, are protected by the Eighth Amendment, which prohibits punishment that is "cruel and unusual." *Id.* The Fifth Circuit has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)). In other words, the same legal standard governs constitutional claims concerning medical care by pretrial detainees and convicted inmates. *See id.* Thus, precedent decided under the Eighth Amendment, which prohibits deliberate indifference to an inmate's serious medical needs, governs Plaintiff's claims that he was denied adequate medical care through the mechanism of food.

A prison official's "deliberate indifference to serious medical needs of prisoners" can constitute "unnecessary and wanton infliction of pain" of the type proscribed by the Eighth Amendment and actionable under 42 U.S.C. §1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"). A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006) (citation omitted). In this context, it is "obduracy and wantonness, not inadvertence or error in good faith," that characterizes the conduct prohibited by the Eighth Amendment, "whether that conduct occurs in connection with establishing conditions of confinement,

9

supplying medical needs, or restoring official control over a tumultuous cellblock." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Thus, the prison official's state of mind must be examined to determine whether the undue hardship endured by the prisoner was a result of the prison official's deliberate indifference." *Bradley*, 157 F.3d at 1025 (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)).

The deliberate indifference standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See Farmer*, 511 U.S. at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Under the subjective prong of this analysis, a prison official acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 847).

The deliberate indifference standard is an "extremely high" one to meet. *Domino*, 239 F.3d at 756. It is well-established that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citing *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999)). "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Gobert*, 463 F.3d at 346 (citing *Domino*, 239 F.3d at 756 (quoting *Estelle*, 429 U.S. at 107)). "A showing of deliberate

indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Gobert*, 463 F.3d at 346 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

### VI.    Diabetic meals claim

An inmate has the right to be provided with well-balanced meals that are sufficient to maintain his health and well-being. *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996). The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the "minimal civilized measure of life's necessities." *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998). There is no constitutional violation if the inmate has been negligently fed food that might be injurious to his health. *Green v. Atkinson*, 623 F.3d 278, 280–81 (5th Cir. 2010). The inmate must allege facts which show that the defendant provided him with food that endangers his health and was acting with deliberate indifference. *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). It must be alleged that the defendant knew of the inmate's condition and disregarded it. *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

Plaintiff's complaint references his need for diabetic-appropriate meals and allegations about any meal requests he made that went unmet but asserts no inability to control his blood sugar on the meals provided, or that he was without any alternatives, such as commissary. According to the grievances filed by Plaintiff and attached to the Motion for Summary Judgment by the Ector County Defendants, Plaintiff began making his complaints known not about the diabetic meals but about his portion sizes July 3, 2020, claiming he should have been provided "double portions." [docket number 59-4 at 2]. The very next day, July 4, 2020, he grieved the idea that "they are giving me half of what everybody is getting now." [*Id.* at 4]. "Plus at dinner

11

time who in the hell has told you 1 peanut butter sandwich was my dinner, come on be realistic about this. Not you not nobody knows my body and what it needs on a tray…but please don't ignore my petition due to the fact that I'm asking for what I need and not for what I want." [*Id.* at 5] (corrections made).

Admittedly, there were instances where snacks were missed, such as on July 29, 2020, Plaintiff was given his "nighttime dietary snack and I was missing my fruit (a whole apple) that goes with my diet and I told Officer Luna about it and I told her to give it to me in the morning and she said I would get my apple in the morning and morning comes and no apple. I want this looked at because they are messing around with my life if my sugar goes low." [*Id.* at 6] (corrections made, clarification in original). Apparently, he was not given his nighttime snack again on August 8, 2020, and in response, he said, "give me another breakfast plate because my sugar level will go down and by the way its y'all's job to make sure we get it and y'all are not complying with what y'all need to do as far as making sure we get what we are by law supposed to get." [*Id.* at 10].

Also, on August 8, 2020, Plaintiff filed a grievance that he was "not given my diet snack due to medical took me off the list…and I have been telling medical that the kitchen is not giving me enough food on my tray…so I need this to get resolved because you don't play with nobody's health and I'm in the process of suing someone." [4] [*Id.* at 12] (corrections made).

However, most of his grievances appeared to focus on the concept of whether he was, in fact, receiving 1800 calories a day or not. On August 2, 2020, he began grieving about the number of calories he was being provided on a daily basis. "I'm supposed to get 1800 calorie diet. And I know they don't give me no 1800 calories because even the nurses have seen my

_____

[4] Apparently, Plaintiff's diabetes is controlled with a combination of diet and medication, and not insulin. The Court is not convinced the severity of Plaintiff's diabetic condition would satisfy the constitutional definition of "serious medical condition."

plates and they disagree with the amount I get it's not right they give me like a 600 calorie diet because they give me not even a reasonable amount and they give me milk which is 10 calories and a jelly which is 2 calories and some carrots and 2 slices of bread and peanut butter that does not amount to 1800 calories." [*Id.* at 8] (corrections made). On August 8, 2020, Plaintiff again threatened "I'm going to file a lawsuit if this does not get resolved today." [*Id.* at 10] (corrections made).

On August 23, 2020, after days of grieving portion sizes and missed snacks, he explained "I am asking to be moved from facility because I feel my life in danger because every day I wake up and I feel weak due to not getting fed right I get my sugar checked right before we eat and it's a little low at times. I tell nurses about it that I feel weak and they come and check it but they say it has to read 60 before they can act on anything while I'm feeling so weak I have to wait till I'm just dying till they can do something about it…The only thing I hear different nurses and officers [say] is 'Stay out of jail.' What kind of people would say that supposedly they are here to keep us safe." [*Id.* at 18–19] (corrections made, clarification added).

On September 15, 2020, Plaintiff begins to plead with staff about his food portions in light of weight loss. "What kind of lunch meal is cabbage as a main course and water with sprinkles of rice and 2 breads considered a lunch meal this feeding 'Diet Diabetic Tray' is getting worse by the day. Can somebody please do something about this issue it seems the more grievances I write the worse my serving come to me and well if that's y'all's way of fixing the issue it's getting very, very bad. As the day goes and I feel that I'm losing weight and nobody wants to fix this issue. I'm going to continue to keep on writing grievances and the more y'all ignore the issue the worse it's going to get in court." [*Id.* at 40] (corrections made).

13

On September 23, 2020, Plaintiff, having been changed to a regular meal plan by the doctor, apparently still wanted the diabetic nighttime snack attendant with his old meal plan. "Yesterday I was not given my late-night snack and just because the doctor took me off the 'so called 1800 calorie diet' he never took me off my nighttime snack and I asked him about it too and Nurse Lori was there when he said to continue with my snack he just bumped up my calorie diet. Now I don't know who took it upon themselves to not give it to me but I know it wasn't the doctor, so only the doctor can order that as I have been told and he did not order to take my nighttime snack off so whoever 'assumed' I should be off the list assumed wrong just because I get a regular tray doesn't mean I'm not a diabetic…I recommend someone fix this issue, because I will be filing a new lawsuit stating that officers putting upon themselves to take my nighttime snack away just because they 'assumed' now that they give me a regular tray, so that goes to show that diet tray is one and night snack is a different deal." [*Id.* at 54] (corrections made).

Then, of course, Plaintiff was taken off the regular meal plan when his sugars went too high. On October 18, 2020, he filed the following grievance: "Today before lunch Officer Rios came to ask me if I wanted to go check my blood sugar, but was told that medical said 'If I am not taking my medication and not going to get my sugar checked they would stop giving me my night snack.' And first of all medical don't have the authority of taking a damned thing from me that is assigned to me by the doctor. And that is a violation of my rights, and a criminal act. How is medical staff going to take my food away they are starving me as it is and now they want to take my food and try and kill me to death as to taking my food away. And not to mention the medical staff is taking upon themselves as to make that decision. To take my food away if I don't check my blood sugar. And not taking my medication." [*Id.* at 74] (corrections made).

14

The very next day, the following occurred: "Today I didn't get my night snack, because medical staff 'again' has gone away with taking more food away from me and this is why I don't trust Jessica Allen, because she took it upon herself to take my night snack away not knowing that for dinner all I got was one peanut butter sandwich. So by me not taking my meds and not going to check my blood sugar in result am being starved now...What kind of medical staff does this to a person? I will file against everybody that is involved with this kind of treatment due to some idiot medical staff that in reality don't know what they just got themselves into." [*Id.* at 77] (corrections made).

However, looking at Plaintiff's medical records, it was no surprise that his blood glucose levels were hard to control as he appears to have refused more blood glucose tests than he actually took, and routinely refused insulin[5] and medication for his diabetes. Plaintiff arrived at ECDC on or about May 22, 2020. [docket number 59-2 at 3]. Also beginning on May 22, 2020, he started refusing the three-times-a-day blood glucose checks that would have given his medical providers insight into how under-control his diabetes was on a daily basis. [docket number 59-3 at 102]. He then refused blood glucose checks at least one of the three-times-a-day on May 23, May 24, May 25, May 26, May 27, May 29, and May 30, 2020. [*Id.*].

For the month of June, he refused blood glucose checks on at least one of the three-times-a-day on June 1,[6] June 3,[7] June 4,[8] June 5,[9] June 8,[10] June 10,[11] June 13,[12] June 14,[13] June 15,[14]

---

[5] [*See* docket number 59-3 at 6, 9, 10, 11, 21, 23, 41, 42, 44, 45, 56, 57, 58, 64, 66, 69, 70, 102 for documentation of at least 153 separate, documented instances where Plaintiff refused insulin (150 times) or medication (3 documented times)]. He refused insulin even though in each particular instance, his blood glucose numbers indicated a need for insulin based on the sliding scale provided to the medical staff by Texas Tech Family Practice. [*Id.* at 41].
[6] [*Id.* at 102].
[7] [*Id.* at 70].
[8] [*Id.*].
[9] [*Id.*].
[10] [*Id.* at 99].
[11] [*Id.* at 70].
[12] [*Id.* at 96].

June 16,[15] June 19,[16] June 20,[17] June 21,[18] June 22,[19] June 23,[20] June 24,[21] June 25,[22] June 27,[23] June 28,[24] June 29,[25] and June 30,[26] 2020.

In July, Plaintiff refused blood glucose checks on at least one of the three-times-a-day on July 1,[27] July 3,[28] July 12,[29] July 13,[30] July 14,[31] July 15,[32] July 16,[33] July 17,[34] July 18,[35] July 19,[36] July 21,[37] July 22,[38] July 23,[39] and July 30,[40] 2020.

In August, Plaintiff refused blood glucose checks on at least one of the three-times-a-day on August 2,[41] August 5,[42] August 8,[43] August 13,[44] August 14,[45] August 15,[46] August 16,[47]

---

[13] [*Id.* at 69].
[14] [*Id.*].
[15] [*Id.*].
[16] [*Id.*].
[17] [*Id.* at 93].
[18] [*Id.* at 69].
[19] [*Id.*].
[20] [*Id.*].
[21] [*Id.* at 64].
[22] [*Id.*].
[23] [*Id.*].
[24] [*Id.*].
[25] [*Id.*].
[26] [*Id.*].
[27] [*Id.*].
[28] [*Id.* at 65].
[29] [*Id.* at 66].
[30] [*Id.*].
[31] [*Id.*].
[32] [*Id.*].
[33] [*Id.*].
[34] [*Id.*].
[35] [*Id.*].
[36] [*Id.*].
[37] [*Id.* at 58].
[38] [*Id.*].
[39] [*Id.*].
[40] [*Id.*].
[41] [*Id.* at 57].
[42] [*Id.*].
[43] [*Id.*].
[44] [*Id.* at 56].
[45] [*Id.*].
[46] [*Id.* at 55].
[47] [*Id.* at 56].

16

August 17,[48] August 18,[49] August 20,[50] August 24,[51] August 25,[52] August 26,[53] August 27,[54] August 28,[55] August 29,[56] and August 30,[57] 2020.

In September, Plaintiff refused blood glucose checks on at least one of the three-times-a-day on September 2,[58] September 3,[59] September 4,[60] September 5,[61] September 7,[62] September 9,[63] September 10,[64] September 11,[65] September 12,[66] September 13,[67] September 14,[68] September 15,[69] September 16,[70] September 17,[71] September 18,[72] September 19,[73] September 20,[74] September 21,[75] September 22,[76] September 23,[77] September 24,[78] September 25,[79] September 26,[80] September 27,[81] and September 28,[82] 2020.

---

[48] [*Id.*].
[49] [*Id.*].
[50] [*Id.* at 45].
[51] [*Id.*].
[52] [*Id.*].
[53] [*Id.*].
[54] [*Id.*].
[55] [*Id.*].
[56] [*Id.*].
[57] [*Id.* at 41].
[58] [*Id.*].
[59] [*Id.*].
[60] [*Id.*].
[61] [*Id.*].
[62] [*Id.*].
[63] [*Id.* at 44].
[64] [*Id.*].
[65] [*Id.*].
[66] [*Id.*].
[67] [*Id.*].
[68] [*Id.*].
[69] [*Id.*].
[70] [*Id.*].
[71] [*Id.*].
[72] [*Id.* at 42].
[73] [*Id.*].
[74] [*Id.*].
[75] [*Id.*].
[76] [*Id.*].
[77] [*Id.*].
[78] [*Id.*].
[79] [*Id.*].
[80] [*Id.*].
[81] [*Id.*].
[82] [*Id.* at 23].

For October, Plaintiff refused to have his blood glucose checked on at least one of the three-times-a-day on October 1,[83] October 2,[84] October 3,[85] October 4,[86] October 5,[87] October 6,[88] October 7,[89] October 8,[90] October 9,[91] October 10,[92] October 11,[93] October 12,[94] October 13,[95] October 14,[96] October 15,[97] October 16,[98] October 17,[99] October 18,[100] October 19,[101] October 25,[102] October 26,[103] and October 31,[104] 2020.

Records began to run out after October and reflect that he only refused blood glucose checks twice for the month of November, on the 8th[105] and the 9th,[106] and once on December 26,[107] 2020. Nonetheless, this well-documented pattern of non-compliant behavior is hardly indicative of someone overly concerned about controlling his diabetes.

As is clear from the records provided by the Ector County Defendants, Plaintiff complained of not receiving enough food while on the 1800 calorie a day diabetic diet and on September 21, 2020, was removed from the diabetic diet restrictions altogether. [docket number 59-3 at 21]. However, his blood sugar numbers, the times he did test, were increasingly high (in

---

[83] [*Id.*].
[84] [*Id.*].
[85] [*Id.*].
[86] [*Id.*].
[87] [*Id.*].
[88] [*Id.*].
[89] [*Id.*].
[90] [*Id.* at 14].
[91] [*Id.* at 11].
[92] [*Id.*].
[93] [*Id.*].
[94] [*Id.*].
[95] [*Id.*].
[96] [*Id.*].
[97] [*Id.*].
[98] [*Id.*].
[99] [*Id.*].
[100] [*Id.*].
[101] [*Id.*].
[102] [*Id.* at 5].
[103] [*Id.* at 10].
[104] [*Id.* at 4].
[105] [*Id.* at 3].
[106] [*Id.* at 2].
[107] [*Id.* at 10].

the 200–300 range).[108] [*Id.*]. The doctor was contacted about Plaintiff's rising blood sugar numbers, and on October 18, 2020, Plaintiff was placed back on the 1800 calorie a day diabetic diet. [*Id.*]. According to the nurse's notes, "inmate became angry [with] medical staff, inmate stopped monitoring CBG's[109] [and] stopped coming to window for medication (Metformin 500 mg.)." [*Id.*] (clarification added).

Plaintiff has not alleged facts sufficient to state a claim that he was deprived of the "minimal civilized measure of life's necessities." *See Talib*, 138 F.3d at 214 n. 3. "Although [a plaintiff] is entitled to have basic health care needs met, he does not have a right to the best diet available and there is no guarantee that every item served will meet his standards." *Barton v. Dietician*, No. H-12-1069, 2012 WL 3063904, at *3 (S.D. Tex. July 26, 2012) (citing *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992)). Plaintiff only offers conclusory allegations to support his claim that the prison diet was inappropriate for his condition and caused him harm, which is insufficient to state a claim for which relief might be granted. *See, e.g., Dominguez v. Hoover*, No. 1:08-CV-173-BI ECF, 2010 WL 2382325, at *3 (N.D. Tex. Feb. 2, 2010) (explaining that the plaintiff failed to raise a constitutional violation claim despite the fact that his diabetic diet tray was discontinued for a short period of time). To the extent Plaintiff asserts a constitutional claim based on an inadequate diet, it fails because he has not alleged facts showing a serious medical need or subjective knowledge of a substantial risk of serious harm by Defendants.

Plaintiff's conclusory and unsupported allegations are easily overcome by Defendants' uncontradicted proof. *Jackson v. Lucine*, 119 F. App'x 70, 2004 WL 2903661 at *1 (9th Cir.

---

[108] According to the sliding scale provided by Texas Tech Family Practice, anything over 151 required 2 units of insulin to correct, and a blood glucose measurement as high as 300 required 6 units of insulin to correct. [docket number 59-3 at 10].

[109] Capillary blood glucose.

Dec. 14, 2004) (prisoner failed to state a claim for allegedly being denied diabetic meals); *Humphrey v. McCurtain County*, 203 F.3d 835, 2000 WL 107401 at \*2 (10th Cir. 2000) (court granted summary judgment where inmate alleged her diabetic diet was inadequate). Consequently, summary judgment shall be granted in favor of the Ector County Defendants. *Wallen v. Olsen*, 75 F. App'x 289, 2003 WL 22139580 (5th Cir. Sept. 17, 2003) (district court dismissed prisoner's claim of being fed non-diabetic food as frivolous) (remanded on other grounds); *see Lingo v. Boone*, 402 F.Supp. 768, 770 (N.D. Cal. 1975) (denial of a special diabetic diet did not constitute a civil rights violation); *Owens v. Robinson*, 442 F.Supp. 1368, 1391 (D.C. Pa. 1978) (failure to provide a special diabetic diet did not establish a constitutional violation); *see also Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (prison official's failure to provide diabetic diet to diabetic inmate was not deliberate indifference when inmate "received appropriate accommodations and regular medical screenings"); *Radunz v. Muhlhausen*, 375 F. App'x 618, 620–21(7th Cir. 2010) (no deliberate indifference when inmate received regular medication); *Cody v. CBM Corr. Food Servs.*, 250 F. App'x 763, 765 (8th Cir. 2007) (summary judgment was proper on inmate's claim that defendant failed to provide him with a special diabetic diet, as ordered by the doctor, when inmate presented no evidence of immediate danger to his health or that his health suffered due to failure to provide prescribed diet); *Harris v. Donaldson*, 71 F.3d 876, 1995 WL 725438, at \*2 (5th Cir. Nov. 3, 1995) (no deliberate indifference when prisoner received medication for diabetes, rendering his §1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for diabetes).

Plaintiff's grievances all center around the idea that he does not believe the portions of food he was being served reflected 1800 calories a day. But then he argued the milk he received

was ten calories,[110] which is not realistic, as there are no 10 calories portion of milk commercially available, and jelly which he claims represents a scant 2 calories,[111] which is also a gross understatement, and perhaps therein lies the problem — Plaintiff has no real-world application in calorie-counting, only in assessing portion sizes. He knows what the other inmates get on their non-diabetic trays,[112] and wanted that portion of food on his tray.

Other times, he would refuse his night snack and ask for "another breakfast plate [instead] because my sugar level will go down" and then he would threaten the staff with "a lawsuit if this does not get resolved today." [docket number 59-4 at 10] (clarification added). The Court fails to understand how someone so obsessed with his blood sugar levels being low routinely refused to test them when given the opportunity. According to his grievances, "I want to be transferred to a different place that is not Ector County because I am slowly being killed by the food I am getting or am going to die of hunger." [*Id.* at 19] (corrections made). "Who is God's world going to feed a human being 1 sandwich and call it a meal?????" [*Id.* at 21] (corrections made, emphasis in original).

Plaintiff's claim that he received nutritionally and quantitatively inadequate food while at ECDC arises under the Eighth Amendment's proscription on cruel and unusual punishment. Although the United States Constitution does not require comfortable prisons, neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined. *Hellig v. McKinney*, 509 U.S. 25, 31 (1993). However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). After incarceration, only the

---

[110] [docket number 59-4 at 8].
[111] [*Id.*].
[112] [*Id.*].

'unnecessary and wanton infliction of pain' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citations omitted)). Claims challenging conditions of confinement under the Eighth Amendment must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571–72 (11th Cir. 1985).

The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). It is well-established that inmates must be provided nutritionally adequate food, "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). The food need not be "tasty or aesthetically pleasing" but merely "adequate to maintain health." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998); *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)); *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977); *see also Hamm*, 774 F.2d at 1575 (The Constitution requires that prisoners be provided "reasonably adequate food.").

There is both an objective and subjective component of a viable Eighth Amendment claim. The first requirement, the objective component of Eighth Amendment analysis, requires:

> conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'"

*Taylor v. Adams*, 221 F.3d 1254, 1257–58 (11th Cir. 2000) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981))), *cert. denied*, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001).

The second requirement, the subjective component of Eighth Amendment analysis, requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258 (citing *Wilson v. Seiter*, 501 U.S. at 300) ("The source of the intent requirement is not the predilections of this Court, but in the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify."). "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor*, 221 F.3d at 1258 (quoting *Estelle*, 429 U.S. at 105).

The Court recognizes that the constitution requires prison officials to serve prisoners nutritionally adequate food that is sufficient to preserve their health. However, the denial of food is not a *per se* violation of the Eighth Amendment, and the court must assess the amount and duration of the deprivation in question. *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999); *see generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, satisfy the first *Farmer* prong); *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation); *Cooper v. Sheriff of*

23

*Lubbock County*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand*, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned ... of sufficient food to maintain normal health."); *Robbins v. South*, 595 F.Supp. 785, 789 (D. Mont. 1984) (requiring inmate to eat his meals in less than 15 minutes does not amount to cruel and unusual punishment).

Under the Eighth Amendment, an inmate has no right to meals of the inmate's choosing, only a right to sufficiently nutritious food that is not contaminated or otherwise immediately dangerous to the inmate's health. *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 570–71 (10th Cir. 1980)); *Magi v. Thompson*, No. 00-C-479-C, 2000 WL 34230096 *5 (W.D. Wis. Aug. 9, 2000). Plaintiff contends that the meals that were provided were insufficiently nutritious (not really 1800 calories), and that the parts he was willing to eat were insufficient in size (volume) in comparison to non-diabetic meal trays. However, Plaintiff has failed to point to one documented instance of low blood sugar because of his meal tray formulation. If anything, his blood sugar was too high when the ECDC gave into his demands for normal portions (non-diabetic trays) for a month and his blood sugar numbers spiked dangerously into the 200-300 range.

The Prison Litigation Reform Act provides in part, "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997e(e). A prisoner plaintiff in a case filed under 42 U.S.C. §1983 must allege more than *de minimis* physical injury to state a claim for physical or emotional damages-regardless of the nature of the claim. 42 U.S.C. § 1997e(e); *Geiger v.*

*Jowers*, 404 F.3d 371 (5th Cir. 2005). In the absence of any definition of "physical injury" in 42 U.S.C. §1997e(e), the well-established Eighth Amendment standards guide the analysis in determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering. That is, the injury must be more than *de minimis*, but need not be significant. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (a sore, bruised ear lasting for three days—was *de minimis*).

Despite his assertions, Plaintiff has not alleged any physical injury as a result of purportedly being denied an occasional snack bag, apple, or the alleged nutritionally inadequate meals. There is no indication Plaintiff's medical condition was aggravated by the isolated incidents. Plaintiff does not mention any illness occasioned because he did not receive a diabetic snack or what he considered to be an inadequate-by-volume food tray. In fact, documentation submitted by the Ector County Defendants demonstrates that Plaintiff's blood glucose numbers were regularly too high, not too low, as was his fear. He complained he was being starved and his blood sugar numbers would plummet, but the summary judgment evidence submitted suggests otherwise.

A claim for damages is barred if no physical injury is alleged. *Hutchins v. McDaniels*, 512 F.3d 193, 196 (5th Cir. 2007); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). Accordingly, Plaintiff may not recover the $3.5 million in damages he seeks. The Fifth Circuit has recognized, however, that a plaintiff may be entitled to nominal damages if there has been a constitutional violation without an actual injury. *Williams v. Kaufman County*, 353 F.3d 994, 1014 (5th Cir. 2003).

To state a claim for a violation of the Eighth Amendment based on either "cruel and unusual punishment" or "denial of medical treatment" a plaintiff must prove that the defendants

were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In interpreting the applicable mental standard for "deliberate indifference" in conditions of confinement cases, *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995), the Supreme Court has held the standard is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is the equivalent of wanton behavior rather than inadvertence or error in good faith. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The failure to alleviate a significant risk that the official should have perceived but did not is insufficient to show deliberate indifference. *Domino*, 239 F.3d at 756 (citations omitted). The establishment of mere negligence is not a sufficient basis for recovery. *Neals*, 59 F.3d at 533. Moreover, the negligent treatment of a medical condition is not constitutionally inadequate. *Hare*, 74 F.3d at 645.

However, under certain circumstances diabetes can be a serious medical condition and the failure to properly treat the disease could support an Eighth Amendment claim. *Walker v. Oldham*, 996 F.2d 308, 1993 WL 241902, at *3 (5th Cir. Jun. 25, 1993) (prisoner may be able to recover because jail refused to serve him a diabetic meal).

While Plaintiff focuses on the presumptive inadequacy of the diabetic diet meals, having reviewed the entire record, it seems as though Plaintiff, who clearly was not satisfied with the quantity or quality of the medically prescribed diabetic diet trays, periodically chose to eat the regular unrestricted meals to satisfy his appetite and then complained about being denied the supplemental diabetic snack bag.

26

The Court will not hear Plaintiff complain about the consequences of his actions brought about by his own conduct. In other words, he cannot create a situation in which the Defendants are prohibited by policy and medical advice from serving him a something other than a diet tray and then attempt to hold them accountable for his actions. If Plaintiff chooses to forgo the medically prescribed diet to the detriment of his own health—which has not been placed in issue—the Defendants are not liable. There is simply no proof of a policy or custom that results in under-nourishing diabetic inmates or depriving them of a diet meal when ordered by a physician. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). To the contrary, Defendants have a comprehensive policy and well-developed procedures for preparing and distributing medically restricted dietary meals to the inmates. *Taylor v. Anderson*, 868 F.Supp. 1024, 1025–26 (N.D. Ill. 1994) (court denied motion to dismiss where inmate alleged defendant wholly failed to provide adequate prescribed diabetic).

Assuming *arguendo*, Plaintiff's diabetes is considered a serious medical condition, there is no indication that Defendants were deliberately indifferent to his disease. *Mikesell v. Brown*, 55 F. App'x 717, 2002 WL 31933195 at *1 (5th Cir. Dec. 23, 2002) (affirming summary judgment based on the absence of deliberate indifference where prisoner plaintiff did not receive an insulin shot on four occasions). In the absence of corroborating evidence, the Court will not imagine a cooperative Plaintiff was, without justification, denied adequate diet meals. At the very best, Plaintiff has stated—not proven—only negligent conduct of Defendants. There being no constitutional violation, Plaintiff's claim fails.

Furthermore, given the posture of this case, Plaintiff's conclusory and unsupported allegations are easily overcome by Defendants uncontradicted proof. *Jackson v. Lucine*, 119 F.

App'x 70, 2004 WL 2903661 at *1 (9th Cir. Dec. 14, 2004) (prisoner failed to state a claim for allegedly being denied diabetic meals); *Humphrey v. McCurtain County*, 203 F.3d 835, 2000 WL 107401 at *2 (10th Cir. 2000) (court granted summary judgment where inmate alleged her diabetic diet was inadequate). Consequently, summary judgment shall be granted in favor of all Defendants. *Wallen v. Olsen*, 75 F. App'x 289, 2003 WL 22139580 (5th Cir. Sept. 17, 2003) (district court dismissed prisoner's claim of being fed non-diabetic food as frivolous) (remanded on other grounds); *see also Lingo v. Boone*, 402 F.Supp. 768, 770 (N.D. Cal. 1975) (denial of a special diabetic diet did not constitute a civil rights violation); *Owens v. Robinson*, 442 F.Supp. 1368, 1391 (D.C. Pa. 1978) (failure to provide a special diabetic diet did not establish a constitutional violation). Thus, Plaintiff fails to establish that relief is available under §1983, and accordingly, the fifteen Ector County Defendants' Motion to Dismiss, construed by this Court as a Motion for Summary Judgment, as well as their Supplement in Support of their Converted Motion for Summary Judgment, will be granted. [docket numbers 54, & 59, respectively].

## VII.    State law claims

To the extent Plaintiff has any remaining state law claims, the Court dismisses these under 28 U.S.C. §1367. Since this Court no longer has original jurisdiction because it has already dismissed the federal claims, supplemental jurisdiction over state law claims should be declined. This is also true because the interests of judicial economy, convenience, and fairness will be served by declining to exercise supplemental jurisdiction over any state law claims.

In this circuit, the general rule is to decline the exercise of supplemental jurisdiction when all federal claims are dismissed or eliminated prior to trial. *See Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). However, this rule is neither mandatory nor absolute. *See id.* Rather, the Fifth Circuit reviews a district court's decision to decline supplemental jurisdiction for an

abuse of discretion. *See Batiste v. Island Records, Inc.*, 179 F.3d 217, 226 (5th Cir. 1999); *see also Robertson v. Neuromedical Center*, 161 F.3d 292, 296 (5th Cir. 1998) ("[D]istrict court has wide discretion"). Given that wide discretion, this Court will decline to exercise supplemental jurisdiction over any remaining state law claims as all federal claims over which this Court had original jurisdiction have been dismissed.

## VIII.   Conclusion

Court grants Defendant Jackie Nunez's Motion to Join and Adopt Summary Judgment Motion. The Court also grants the fifteen Ector County Defendants' Motion for Summary Judgment and dismisses with prejudice all of Plaintiff's claims against them. However, any pending state law claims are dismissed without prejudice. This case is now closed.

It is so **ORDERED**.

SIGNED this 20th day of August, 2021.

_____
DAVID  COUNTS
UNITED STATES DISTRICT JUDGE