UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| ANGELA ROBINSON, individually | § | |
| CLARA BUSBY, as next friend, | § | |
| guardian, and parent of and for minors | § | |
| L.H. and T.H.; and RACHEL AMBLER | § | |
| as independent administrator of, and on | § | |
| behalf of ANGELA ROBINSON, minors | § | |
| L.H. and T.H., the ESTATE OF SAVION | § | |
| VASHON HALL, and SAVIO VASHON | § | |
| HALL'S heirs-at-law | § | |
| | § | |
| VS. | § | NO: 7:21-CV-111-DC |
| | § | |
| MIDLAND COUNTY, TEXAS; | § | |
| SOLUTA INC.; ADEOLA C. ADESOMI; | § | |
| FLOR ESTRADA; TIMOTHY GENE | § | |
| FORBUSH, JR.; ESTHER EBELE | § | |
| IHEDIWA; LILIAN KERUBO OKERI; | § | |
| KELLY V. ROBINS; and | § | |
| DANIEL T. STICKEL | § | |

**MIDLAND COUNTY DEFENDANTS' REPLY IN SUPPORT OF THEIR
RULE 12(C) MOTION TO DISMISS**

Respectfully submitted,


By: /s/ R. Layne Rouse
R. LAYNE ROUSE
State Bar No. 24066007
lrouse@shaferfirm.com
MILES NELSON
State Bar No. 14904750
mnelson@shaferfirm.com

**SHAFER, DAVIS, O'LEARY & STOKER**
P.O. Drawer 1552
Odessa, TX 79760-1552
(432) 332-0893
(432) 333-5002 – Facsimile

**ATTORNEYS FOR THE MIDLAND COUNTY
DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document has been filed via the Court's electronic filing system and, by such, is being served on this 8th day of October, 2021, on all counsel of record.

                                            /s/ R. *Layne Rouse*
                                            R. Layne Rouse

TO THE HONORABLE JUDGE OF THE SAID COURT:

COME NOW MIDLAND COUNTY, TEXAS, ("Midland County") and DANIEL T. STICKEL ("Stickel") (collectively the "Midland County Defendants" or "Defendants") and file this Reply in support of their Motion to Dismiss under Rule 12(c) of the Federal Rules of Civil Procedure. The Midland County Defendants request that the Court dismiss all claims filed against them. A dismissal is proper as to all claims filed against Stickel because Plaintiffs' allegations fail to overcome Stickel's assertion of qualified immunity. A dismissal is proper as to the claims filed against Midland County because the allegations fail to identify a policy that was the moving force of the violation. Plaintiffs argue Midland County ratified the nurse defendants' alleged violations, but Plaintiffs' pleaded facts do not support this assertion, and their cited cases support Midland County's motion to dismiss. These claims should be dismissed without opportunity to replead because the facts demonstrate the claims are without merit as a matter of law. Accordingly, the Court should grant Defendants all requested relief, and dismiss Plaintiffs' claims with prejudice.

## I.
## REPLY

**A.    The Court Should Dismiss Plaintiffs' Claims Against Stickel.**

*1.    Plaintiffs' Factual Pleadings Support a Dismissal.*

The Court should dismiss the claims asserted against Stickel. As discussed in Defendants' motion, to assert a medical care claim against Stickel, Plaintiffs' burden is to allege facts showing that Stickel "refused" to treat Hall, "ignored" his complaints, or "intentionally treated him incorrectly." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Plaintiffs' facts affirmatively establish the opposite.

In their response, Plaintiffs attempt to support their claims by referencing some of their factual allegations while omitting references to others. For example, Plaintiffs' response fails to

reference that Stickel's first interaction with Savion Hall ("Hall") occurred about thirty minutes after Hall received a breathing treatment. *Compare* Doc. No. 1, ¶76 p. 42 ("Approximately 0030, inmate Hall . . . approached the guard station") *with* ¶23, p. 16 (treatment for 7/11/19 received at "0000"). Plaintiffs omit that when Hall first approached Stickel, and despite this being only thirty minutes after Hall's last treatment, Stickel immediately sought to "verify" with "the on-duty nurse" *vis-à-vis* "Officer Jimenez who was manning the special housing guard station" whether his understanding of a wait period was correct. Doc. No. 1, ¶ 76, p. 42. Plaintiffs' response omits that the on-duty nurse informed Stickel through Officer Jimenez that "Inmate Hall would not be able to return for a breathing treatment until approximately 4 hours after his last treatment". Doc. No. 1, ¶ 76, p. 42. Plaintiffs omit that Stickel was not refusing treatment because Hall went to medical around "0400" to receive additional treatment. *See* Doc. No. 1, ¶23, p.16. Plaintiffs omit that after Hall approached Stickel at 6:15 am, Stickel immediately called special housing to recheck on Hall's status to return. Then, after Stickel received no answer, Stickel ensured that Hall had his inhaler, was not out of medicine, and "informed [the relieving officer] of inmate Hall's situation and how many times [Stickel] had sent [Hall] to medical for a breathing treatment", which prompted another call to medical. Doc. No. 1, ¶76, p. 43-44. These omitted facts obliterate the claim that Stickel acted with deliberate indifference. The Court should dismiss the claims.

   2.  ***Stickel's Reliance on the On-Duty Nurse's Advice is not a "Red Herring".***

Plaintiffs' allegations affirmatively establish that Stickel was relying upon the on-duty nurse's advice when determining how to respond to Hall's requests. Doc. No. 1, ¶ 76, p. 43 ("the allotted time per the nurse on-duty had yet to pass"). While Plaintiffs attempt to downplay Stickel's reliance on the nurse's advice as a "red herring", it is not.

As courts in this circuit note:

> If the official [like Stickel] is not a trained health care worker, he cannot be found to be deliberately indifferent to an inmate's health unless the official had been advised by a health worker of the danger or unless the danger was so obvious that even a layman could recognize the risk. The officer defendants could not be expected to recognize ailments undetected by health professionals.

*Willcoxson v. Thaler*, CIV.A. H-10-2839, 2012 WL 5943384, at *10 (S.D. Tex. Nov. 27, 2012) (internal citations omitted, citing cases). Plaintiffs *do not* allege that any health care worker advised Stickel to watch for certain signs and symptoms that Stickel ignored. Plaintiffs' *do* allege that Hall was seen *multiple* times by health professionals that evening and that *no one* recognized or called a medical emergency until *after* Hall's final breathing treatment when his condition did not improve. Stickel's reliance on the nurse's advice and medical's continuing monitoring of Hall's condition is not a red herring, but facts that require a dismissal.[1]

### 3. *Plaintiffs' Suicide Cases are Distinguishable.*

The Court should reject Plaintiffs' argument that by providing some care to Hall, Stickel was acting with deliberate indifference. Plaintiffs rely on "suicide" cases like *Converse v. City of Kemah, Texas*, 961 F.3d 771 (5th Cir. 2020), in support, but *Converse* is inapposite. In *Converse*, the court held an officer could still be liable despite removing some but not all known dangerous articles in a suicidal inmate's possession, which was akin to intentionally treating the suicidal inmate incorrectly. *Id.* at 779. Here, the facts show that Stickel did not ignore Hall (Stickel always responded), did not refuse Hall treatment (Hall received treatment at 4:00 am and 7:00am), and did not intentionally treat Hall incorrectly (for which there are no supporting facts). While Plaintiffs latch onto Stickel's statement in response to Hall's 6:15 am medical request, which "gave

---

[1] Plaintiffs appear to argue that Stickel did not make the on-duty nurse aware of Hall's condition when he called the nurse's station through special housing around 12:30 am. This is the true red herring argument. First, Plaintiffs' facts establish that the nurse *was* aware of Hall's condition. Hall had just visited medical about 30 minutes prior to his 12:30 am request, and based on the nurse's response, the nurse understood Hall's request—he wanted another breathing treatment because he was still struggling. Second, Hall successfully returned for additional treatment at 4:00 am, after which his condition improved. Doc. No. 1, ¶23, p. 16.

[Stickel] nerves", Plaintiffs ignore that Stickel made the statement because he was "unsure of the correct procedure" in that unique situation and chose to rely upon the prior direction provided from the on-duty nurse. Doc. No. 1, ¶76, p. 43-44. Contrary to Plaintiffs' position, if anything, these allegations show a *lack* of subjective indifference and *not* deliberate indifference.

Moreover, unlike the issue in *Converse*, the issue here involves one of medical judgment—was more or different treatment was required. While Plaintiffs may point to Hall ultimately succumbing to his condition, the Fifth Circuit has held that "[c]omplaints about unsuccessful medical treatment do not give rise to a civil rights action." *King v. Kilgore*, 98 F.3d 1338 (5th Cir. 1996) (per curiam) (unpublished) (rejecting a claim for failure to provide medical care where inmate "acknowledged that he received care" but "the care provided did not stop the [asthma] attack"). The Court should dismiss Plaintiffs' claims.

   4.   *Plaintiffs' Complaint Shows Stickel's Actions did not Cause the Claimed Harm.*

Plaintiffs complain that Stickel delayed Hall's medical care, but the allegations show that any "delay" did not cause Hall "substantial harm". *See King*, 98 F.3d 1338 (5th Cir. 1996). As to Stickel's first encounter with Hall (around 12:30 am), Hall successfully received treatment around 4:00 am and returned to his cell. As to Stickel's second encounter with Hall, Stickel called special housing immediately, and then successfully contacted medical about 45 minutes later. Hall did not succumb to his condition during either of these alleged "delays". Instead, as Plaintiffs allege, Hall's condition had been deteriorating for *weeks* prior to Stickel's shift. Also, Hall did not succumb to his condition until about a week *after* Hall received continuous treatment from the hospital. Hall did not die until a week after the alleged delays, and Plaintiffs assert no facts that connect Hall's passing to any purported delay. These claims should be dismissed.

4

### 5. *Qualified Immunity Bars Plaintiffs' Claims*

Finally, qualified immunity bars Plaintiffs' claims. Plaintiffs cite no authority for the proposition that a non-medical officer in Stickel's circumstances is liable for a 45-minute delay in treatment. Here, the inmate had received multiple treatments, was being monitored by medical, and the on-duty nurse informed Stickel that Hall was not eligible to return for additional treatment except once every four hours. Also, in the interim, Stickel ensured that Hall was responsive, conscious, breathing, and always had access to his medication. Case law demonstrates that qualified immunity bars Plaintiffs' claims in such scenarios. *See Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) (holding "a reasonable officer could have believed that a delay of no more than 45 minutes for medical treatment, considering the injuries sustained by [the plaintiff], was lawful under our clearly established law"). The claims against Stickel should be dismissed.

### B. The Court Should Dismiss Plaintiffs' Claims Against Midland County.

Plaintiffs' complaint, likewise, fails to establish any claim against Midland County. Plaintiffs appear to assert liability against Midland County based on alleged acts or omissions of Stickel or, by extension, Soluta's nurses, rather than the general conditions, practices, rules, or restrictions of pretrial confinement. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644-45 (5th Cir. 1996). Regardless of Plaintiffs' theory, to assert a claim against Midland County, Plaintiffs must allege facts supporting all the elements of the "*Monell* test," that is: (1) an official policy (2) promulgated by the municipal policymaker (3) that was the moving force behind the violation of a constitutional right. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Plaintiffs' fail to do this.

### 1. *Midland County is not liable under any theory of episodic act or omission.*

Midland County is not liable under any theory of episodic act or omission. Plaintiffs must show that Midland County officials, acting with subjective deliberate indifference, violated Hall's constitutional rights and that those actions resulted from a municipal policy or custom adopted with objective indifference to the detainee's constitutional rights.[2] *Sanchez v. Young County, Tex.*, 866 F.3d 274, 280 (5th Cir. 2017). Plaintiffs' claims fail on several fronts. *Id.*

Plaintiffs' principal allegation of any alleged "policy or custom" arises from Hall's treatment, that is, from this single case. *See Sanchez*, 866 F.3d at 280. "To be unconstitutional, however, a municipal entity's policy that derives from custom or practice must be so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (internal quotations omitted). "Further, a municipality is almost never liable for an isolated unconstitutional action on the part of an employee." *Id.* (internal alterations and quotations omitted). Plaintiffs fail to assert *any* facts about the alleged mistreatment of other inmates by Stickel, other Midland County officers, other officers with temporary jailers' licenses, or Soluta nurses.

Plaintiffs appear to take a half-hearted attempt at alleging a failure to train claim. Plaintiffs "sprinkle" facts about Stickel only having a temporary jailer's license and not yet taking courses necessary to obtain a jailer's license. Even discounting that Stickel had six-weeks of on-the-job training, courts in this circuit have dismissed failure to train claims based on similar allegations. *Rowland v. Sw. Corr., LLC*, 420CV00847ALMCAN, 2021 WL 4206409, at *6 (E.D. Tex. Aug. 17, 2021), *report and recommendation adopted*, 4:20-CV-847, 2021 WL 4191433 (E.D. Tex. Sept.

---

[2] In an apparent attempt to show deliberate indifference, Plaintiffs argue that Midland County released Hall once he was in the hospital to skirt liability. This is nothing more than an "unwarranted deduction" from the facts, which the Court should reject. *See Emmons v. Painter*, MO:20-CV-00185-DC, 2021 WL 2832977, at *5 (W.D. Tex. May 23, 2021) (The Court "does not strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions.").

6

15, 2021) (holding the "sprinkling" of "temporary licenses" to be "insufficient to plead a claim for failure to train"). Moreover, Plaintiffs' pleadings fail to show a causal link between the alleged lack of training or temporary licenses and the incident. These claims should be dismissed.

### *2. Plaintiffs' Ratification Theory Should be Rejected.*

The Court should reject Plaintiffs' argument that Midland County is liable for the alleged acts of the defendant nurses. As Plaintiffs' allegations establish, the defendant nurses were not Midland County employees, but Soluta employees. Moreover, and "[c]ontrary to plaintiffs' theory, a plaintiff cannot bootstrap government entity liability from the individual failures of employees because there is no *respondeat superior* liability under Section 1983." *Sanchez v. Young County, Tex.*, 866 F.3d 274, 281 (5th Cir. 2017).

The Court should reject Plaintiffs' attempt to argue around *respondeat superior* by claiming Midland County ratified the alleged violations of the defendant nurses. Plaintiffs cite *Sanchez v. Young County, Tex.*, 956 F.3d 785 (5th Cir. 2020), another suicide case, where the Fifth Circuit applied a ratification theory to facts that are distinguishable from this case. Unlike here, in *Sanchez*, (1) there were prior reports of similar alleged occurrences (inadequate inmate monitoring); (2) the County sheriff "knew" the "details" of those prior reports; (3) the County sheriff failed to take any corrective action in response to the prior reports; (4) the County sheriff knew the details of the inmate death at issue and that it involved issues of inadequate monitoring; and, yet, (5) the County sheriff failed to either discipline the officers involved or correct the jail's alleged deficiencies. *Sanchez*, 956 F.3d at 792–93. In contrast, Plaintiffs' complaint contains *no* allegations that (1) there were prior reports of Soluta nurses allegedly falsifying medical records; (2) the Midland County Sheriff "knew" the "details" of those prior reports; but (3) did nothing in response; and (4) the Midland County Sheriff was aware of the details of the allegations at issue

7

here (falsification of medical records by non-employee jail nurses); but, again, (5) failed to take any corrective action. The facts Plaintiffs certified as having evidentiary support fail to include *any* element to support a ratification claim under *Sanchez*. Fed. R. Civ. P. 11.

Plaintiffs mistakenly request the Court to apply the single-incident exception of *Grandstaff v. City of Borger, Tex.,* 767 F.2d 161 (5th Cir. 1985). This should be rejected. While the Fifth Circuit recently cited *Grandstaff* in *Sanchez*, the Court did not endorse a broad application of the exception. In fact, *Sanchez*'s opinion does not even rely on *Grandstaff* as *Sanchez* is *not* a single-incident case. *Sanchez* involved the policymaker's alleged failure to take corrective action despite awareness of **prior**, similar acts. *See Sanchez*, 956 F.3d at 792–93. Contrary to Plaintiffs' argument, a limited application of *Grandstaff* is not a defense "strategy"; it is the law.[3]

Despite this, Plaintiffs argue that *Gradstaff* stands for the broad proposition that a policymaker's failure to correct or reprimand alleged violations post-incident is evidence of ratification. The Fifth Circuit recently addressed and *rejected* this argument. *Westfall v. Luna,* 903 F.3d 534 (5th Cir. 2018). What justified application of the single-incident exception in *Grandstaff* was *not* the policymaker's failure to reprimand the actions of the entire department alone, but the failure to correct the department's indiscriminate use of *deadly* force against an innocent bystander. *Id.* at 553 n. 7.[4] It was the indiscriminate use of deadly force, the most aggressive form of government action, that "demanded greater attention from the city". *Id.* This case does not involve the indiscriminate use of deadly force, but of nurses allegedly failing to

---

[3] "[T]he holding in *Grandstaff* arose from the extraordinary facts of that case, where an entire police department opened fire indiscriminately on a slow-moving pickup truck [and killed an innocent person]. . . . We have therefore limited *Grandstaff*'s application to extreme factual situations." *Lansdell v. Miller*, 817 Fed. Appx. 27, 29 (5th Cir. Aug. 19, 2020) (internal quotations omitted)). This appears to be the Circuit's most recent discussion of *Gradstaff.*

[4] "Indeed, in *Grandstaff*, the disposition of the policymaker was inferred from his conduct after the events of that night, such as the fact that there were no reprimands, no discharges, and no admissions of error. But the episode in *Grandstaff*, involving gunfire and the death of an innocent person, was one of 'dangerous recklessness' that demanded greater attention from the city." *Westfall*, 903 F.3d at 553 n. 7 (internal citations omitted).

8

contemporaneously record health information in an inmate's chart. Moreover, there is no allegation that the County failed to take corrective actions afterwards. The Court should reject Plaintiffs' application of *Grandstaff*.

### 3. *Plaintiffs' Delegation Argument Should Be Rejected.*

The Court should also reject Plaintiffs' "delegation" arguments. In another attempt to argue around *respondeat superior*, Plaintiffs incorrectly claim that Midland County and Soluta are jointly responsible for the defendant nurses alleged actions because Midland County delegated policymaking authority to Soluta regarding health care. This "*Grandstaff*-plus" argument fails.

While asserted under the guise of "delegation", Plaintiffs' argument is nothing more than a recast application of *respondeat superior*. Again, Plaintiffs do not claim the alleged falsification of inmate medical records was an official policy of Soluta, nor do Plaintiffs cite to prior similar events to establish a custom. Instead, Plaintiffs rely on this single incident (the Soluta nurses' treatment of Hall) to support the claim. Plaintiffs cite no authority that *Grandstaff* would even apply to a municipality *vis-à-vis* the acts of its contracting health care provider's employees, especially where there is no allegation the municipality's policymaker was even aware of the incident details yet failed to act. Moreover, it would be illogical for a contract executed *prior* to the alleged violations to become the *de facto* ratification of violations that occurred afterwards. Afterall, Plaintiffs claim Midland County hired Soluta to provide health care services, not to falsify an inmates' medical records.

Moreover, Plaintiffs' complaint fails to show that Midland County delegated policymaking authority at all. In support, Plaintiffs point to the contract with Soluta and argue that Midland County has non-delegable duty to provide medical care, relying on *Rodriguez v. S. Health Partners, Inc.*, 3:20-CV-0045-D, 2020 WL 7056336, (N.D. Tex. Dec. 2, 2020) ("*Rodriguez* II").

Ironically, the predecessor opinion to *Rodriguez* II rejected Plaintiffs' argument. *See Rodriguez v. S. Health Partners, Inc.*, 3:20-CV-0045-D, 2020 WL 2928486, at *8 (N.D. Tex. June 3, 2020). A plaintiff cannot merely rely upon the existence of a contract and a county's "non-delegable" duty to prove delegation. *See Rodriguez* II, at *12 (noting plaintiff citing specific provision of the contract to prove delegation). Again, Plaintiffs' argument fails.

### 4. *Midland County is not Liable Based on a Conditions of Confinement Theory.*

Finally, Plaintiffs' pleadings fail to show that Midland County is liable under any conditions of confinement theory. To prevail on a conditions-of-confinement theory, Plaintiffs must show a "condition—a 'rule,' a 'restriction,' an 'identifiable intended condition or practice,' or 'sufficiently extended or pervasive' 'acts or omissions' of jail officials—that is not reasonably related to a legitimate government objective and that caused the constitutional violation." *Sanchez v. Young County, Tex.*, 956 F.3d 785, 791 (5th Cir. 2020). Although Plaintiffs cite several alleged "conditions"—such as alleged understaffing, Hall's housing, and calling medical emergencies only when an inmate is unresponsive—none of these alleged "conditions" had *anything* to do with the alleged violation. *See* Doc. No. 1, ¶ 90-94. Plaintiffs' do not claim that a condition caused Hall's harm. Plaintiffs claim that the defendant nurses' alleged *decision* to falsify medical records denied Hall the care he needed, which led to his passing. As the court in one of Plaintiffs' cited cases noted, Plaintiffs "ha[ve] not plausibly alleged that a municipal *policy*, rather than the individual *decision* of a municipal employee, was the actual cause of the constitutional violation." *Rodriguez* II, at *14 (internal quotations omitted, emphasis in original). While Plaintiffs attempt to turn the individual decisions into policy via *Grandstaff*, this is improper for the reasons previously discussed. For all these reasons, Plaintiffs *Monell* claims against Midland County should be dismissed.