**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **ANGELA ROBINSON, individually** | § | |
| **CLARA BUSBY, as next friend, guardian,** | § | |
| **and parent of and for minors L.H. and T.H.;** | § | |
| **and RACHEL AMBLER as independent** | § | |
| **administrator of, and on behalf of** | § | |
| **ANGELA ROBINSON, minors L.H. and** | § | |
| **T.H., the ESTATE OF SAVION VASHON** | § | |
| **HALL, and SAVION VASHON HALL's** | § | |
| **heirs at law,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **No. MO:21-CV-111-DC** |
| | § | |
| **MIDLAND COUNTY, TEXAS;** | § | |
| **SOLUTA INC.; ADEOLA C. ADESOMI;** | § | |
| **FLOR ESTRADA; TIMOTHY GENE** | § | |
| **FORBUSH, JR.; ESTHER EBELE** | § | |
| **IHEDIWA; LILIAN KERUBO OKERI;** | § | |
| **KELLY V. ROBINS; and DANIEL T.** | § | |
| **STICKEL,** | § | |
| *Defendants*. | § | |

## ORDER GRANTING MIDLAND COUNTY DEFENDANTS' RULE 12(C) MOTION TO DISMISS

BEFORE THE COURT is Defendants Midland County, Texas and Daniel T. Stickel's ("Stickel") (the "Midland County Defendants") Motion to Dismiss under Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 31), the Response filed by Plaintiffs Angela Robinson, individually, Clara Busby, as next friend, guardian and parent of and for minors L. H. and T. H., Rachel Ambler as independent administrator of, and on behalf of Angela Robinson, minors L. H. and T. H., the Estate of Savion Vashon Hall ("Hall"), and Savion Vashon Hall's heirs at law (collectively, "Plaintiffs") (Doc. 37), and Midland County Defendants' Reply (Doc. 40). After due consideration, Midland County Defendants' Rule 12(c) Motion to Dismiss shall be **GRANTED**. (Doc. 31).

# I. BACKGROUND

Hall was arrested on June 21, 2019, for a drug related offense and detained at the Midland County jail. While in jail, Hall received regular breathing treatments for an underlying medical condition. On July 11, 2019, Hall was transported to the hospital where he died. Plaintiffs claim Midland County officer Stickel denied or delayed Hall from receiving medical care in one shift during which Hall received three breathing treatments.

On July 10, 2019, Stickel started his eight-hour shift at approximately 11:00 p.m., and concluded his shift at around 7:00 a.m., on the morning of July 11, 2019. (Doc. 1 ¶ 76). According to Hall's breathing treatment record, Hall received three breathing treatments during Stickel's shift, at 12:00 a.m., 4:00 a.m., and 7:00 a.m. (*Id.* ¶ 23). At around 12:30 a.m., Hall approached Stickel and requested to visit medical. Stickel contacted medical, and medical informed Stickel that Hall could not return for another breathing treatment for another four hours. (*Id.* ¶ 76).

Stickel informed Hall of medical's response and continued to check on Hall to make sure he was breathing. Stickel told Hall that he would keep an eye on Hall. (*Id.*). About two hours after Hall received his second breathing treatment at around 6:15 a.m., Hall approached Stickel again and complained that he was having trouble breathing. Stickel attempted to call medical, but did not get a response. (*Id.*). Stickel noted that Hall had an inhaler in his hand and confirmed that the inhaler was not out of medicine. (*Id.*).

About forty minutes later, around 6:55 a.m., Stickel informed his relieving officer of Hall's condition and called medical requesting that Hall visit medical. (*Id.*). When medical confirmed it could see Hall, Hall was transported to medical for a third breathing treatment.

(*Id.*).  Following the third breathing treatment, Hall's oxygen levels were recorded as being low, which led Hall to being transported to the hospital for additional treatment.  (*Id.* ¶¶ 23, 76).

On June 16, 2021, Plaintiffs filed their Original Complaint under 42 U.S.C. § 1983, alleging constitutional violations related to the alleged denial of medical care and the death of Hall against the Midland County Defendants as well as Soluta, Inc. ("Soluta") and six nurses Adeola C. Adesomi, Flore Estrada, Timothy Gene Forbush, Jr., Esther Ebele Ihediwa, Lilian Kerubo Okeri, and Kelly V. Robins ("Nurse Defendants").  (Doc. 1).  On September 3, 2021, the Midland County Defendants filed their Rule 12(c) motion to dismiss.  (Doc. 31).

## II.  LEGAL STANDARD

"Rule 12(c) provides the proper authority for seeking judgment on the pleadings after the pleadings are closed." *Eyer v. Rivera*, SA-17-CV-01212-JKP, 2019 WL 5543030, at *1–2 (W.D. Tex. Oct. 25, 2019) (quoting *Channel Source Inc. v. CTI Indus. Corp.*, No. 3:15-CV-0271-P, 2015 WL 13118198, at *1 (N.D. Tex. Oct. 26, 2015)).  Rule 12(c) states that after the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings.[1] Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."  *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (internal quotations omitted).

### A.    Pleading Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted.  In deciding a Rule 12(b)(6) motion to dismiss for failure to state a

---

[1] "Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and answer, unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply, cross-claim answer, or third-party answer normally will mark the close of the pleadings." *Nortel Networks Ltd. v. Kyocera Wireless Corp.*, CIV. A. 3:02-CV-0032-D, 2002 WL 31114077, at *1 (N.D. Tex. Sept. 20, 2002) (internal citations omitted).  Further, "that under the court's scheduling order there is still time for a party to move for leave to amend does not affect this reasoning." *Id.*

claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court of the United States has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

**B.** **Section 1983**

Liability under 42 U.S.C. § 1983 results when a "person" acting "under color of" state law deprives another of rights "secured by the Constitution" or federal law. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). Thus, a plaintiff must identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266,

271 (1994).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Government officials "are entitled to qualified immunity under Section 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *D.C. v. Wesby*, — U.S. —, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  *Id.* (cleaned up).  In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate."  *Id.* This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690–91 (1978), the Supreme Court held that municipalities may be sued under Section 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*.  "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'"  *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).  To establish municipal liability under Section 1983, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."  *Peterson*, 588 F.3d at 847. These three requirements "are necessary to distinguish individual violations perpetrated by local

government employees from those that can be fairly identified as actions of the government itself." *Piotrowski*, 237 F.3d at 578. A plaintiff need not offer proof of their allegations at this stage, but still must plead facts plausibly supporting each element. *Iqbal*, 556 U.S. at 678.

"Official policy establishes culpability, and can arise in various forms." *Peterson*, 588 F.3d at 847. Official policy usually exists in the form of written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* In addition, a "single decision" may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). A policy can be shown in "extreme factual situations" where "the authorized policymakers approve a subordinate's decision and the basis for it," thereby ratifying the subordinate's unconstitutional actions. *Peterson*, 588 F.3d at 848 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Finally, a municipality's decision not to train or supervise its employees about their legal duty to avoid violating citizens' rights may rise to the level of an official policy for purposes of Section 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).

A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy. *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). And "a plaintiff must establish that the policy was the moving force behind the violation. In other words, a plaintiff must show direct causation." *Peterson*, 588 F.3d at 848. This means that "there must be a direct

causal link" between the policy and the violation, not merely a "but for" coupling between cause and effect. *Id.*; *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cty.., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006).

A government entity may incur Section 1983 liability for the "episodic acts and omissions" of its officials if the plaintiff shows that (1) the government official, acting with subjective deliberate indifference, violated the detainee's constitutional rights, and (2) the government official's acts resulted from a municipal policy or custom adopted with objective indifference to the detainee's constitutional rights. *Sanchez v. Young Cty.., Tex.*, 866 F.3d 274, 280 (5th Cir. 2017).

"Deliberate indifference is an extremely high standard to meet." *Dyer v. Hous.*, 964 F.3d 374, 380 (5th Cir. 2020). A prison official acts with deliberate indifference only if (1) "he knows that inmates face a substantial risk of serious bodily harm," and (2) "he disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The failure to alleviate a significant risk that the official "'should have perceived, but did not' is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer*, 511 U.S. at 838). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute

deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. A showing of deliberate indifference requires the prisoner or pretrial detainee to show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*.

## C.     Qualified Immunity

A government official is entitled to qualified immunity under Section 1983 unless (1) the official violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. *Wesby*, 138 S. Ct. at 589. To be liable under Section 1983, an officer "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017); *see also Watson v. Interstate Fire & Cas. Co.,* 611 F.2d 120, 123 (5th Cir. 1980) (stating that "vicarious liability cannot be the basis for recovery" under Section 1983: "Liability may be found only if there is personal involvement of the officer being sued.").

"The doctrine of qualified immunity shields government officials from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rutland v. Pepper*, 404 F.3d 921, 923 (5th Cir. 2005). "The first step in [the] qualified immunity analysis is determining whether a plaintiff has successfully alleged facts showing the violation of a statutory or constitutional right by state officials." *Id*. "If there is no violation, then the inquiry ends." *Id*. If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law

which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A court may rely on either prong of the defense in its analysis. *Id.*

Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Id.* To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal. *Id.* An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.*

## III.   DISCUSSION

### A.   Plaintiffs' Claims Against Stickel

Section 1983 is not a general tort remedy available to all who have suffered an injury at the hands of the state or its officers. *Waddleton v. Rodriguez,* 750 F. App'x 248, 252 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 2617 (2019). To prove a cause of action under § 1983, a plaintiff must show that they have "been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Id.* To succeed under § 1983 based on episodic acts or omissions,[2] a plaintiff must show: (1) that a government official acted or failed

---

[2] "An officer's failure to provide a detainee with immediate medical treatment is considered an episodic act or omission." *McCarty v. Dougherty*, No. 9:17-CV-182, 2021 WL 956225, at *3 (E.D. Tex. Feb. 2, 2021) (citing *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)), *report and recommendation adopted*, No. 9:17-CV-182, 2021 WL 949465 (E.D. Tex. Mar. 12, 2021), *appeal dismissed*, No. 21-40222, 2021 WL 4301357 (5th Cir. Apr. 22, 2021). This applies to cases involving both pretrial detainees and convicted inmates. "When the alleged unconstitutional conduct involves an episodic act or omission, the question is whether the state official acted with

to act with subjective deliberate indifference to the constitutional rights of the plaintiff; and (2) the predicate act or omission resulted from a government custom or policy that was adopted or maintained with objective deliberate indifference to the plaintiff's constitutional rights. *Estate of Hooker-Murray v. Dallas Cty..,* No. 3:07-CV-0867-P, 2008 WL 11424337, at *4 (N.D. Tex. Dec. 19, 2008) (citing *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997)), *aff'd sub nom., Hooker-Murray v. Dall. Cty.*, 332 F. App'x 991 (5th Cir. 2009).

A prison official acts with deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rogers v. Hierholzer*, 857 F. App'x 831, 832–33 (5th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "In the context of claims based on denial of adequate medical care, demonstrating deliberate indifference requires evidence that prison officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* at 833 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. "Deliberate indifference is an extremely high standard to meet," requiring "a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice." *Id.*

In this case, there is no indication that Stickel acted with deliberate indifference to Hall's medical needs. Hall was seen by medical and treated once medical was notified of Hall's

---

deliberate indifference to the inmate's constitutional rights, regardless of whether the individual is a pretrial detainee or state inmate." *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001).

requests. Stickel responded to Hall's complaints by calling medical each time Hall asked to see medical, continuing to keep a close watch on Hall, confirming Hall had access to his medication, and informing the relieving officer of Hall's condition, which resulted in Hall seeing medical for a third time at the end of Stickel's eight-hour shift. Hall did not ignore Hall's complaints or refusal to treat Hall. Instead, Hall received treatment three times during Stickel's shift. Plaintiffs' allegations negate the claim that Stickel acted with deliberate indifference toward Hall.

The allegations in the record wholly fail to rise to the level of showing deliberate indifference by Stickel, as Hall received medical treatment. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmates allegations of deliberate indifference."). In sum, Plaintiffs wholly fail to plead facts alleging Stickel "refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Rogers*, 857 F. App'x at 833; *see also Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013). Plaintiffs take issue with the type of care Hall received. Plaintiffs' general invocation of the phrase "deliberate indifference" fails to allege Stickel had knowledge that Hall was at a substantial risk of serious harm as required to state a claim. While Plaintiffs may argue that Stickel did not take the "most prudent course of action, that is not the test for a § 1983 claim." *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 527 (5th Cir. 1999).

When evaluating alleged constitutional violations asserted under § 1983, "[c]ourts must not judge officers with the 20/20 vision of hindsight." *City & Cty. of San Francisco, Calif. v. Sheehan,* 575 U.S. 600, 615 (2015). Whether Stickel may have believed after the fact that he

could have done more does not show that his earlier actions were constitutionally inadequate. Stickel's admission to being "unsure" of how to respond the second time Hall approached him does not show a "wanton disregard" for Hall, but that he was unsure of the extent of Hall's need, and that he chose to rely on (1) knowing that Hall was under medical's care, and (2) medical's advice that Hall could return for additional treatment only after four to five hours. Moreover, the fact that Hall ultimately, a week later, succumbed to his condition, the Fifth Circuit has haled that "[c]omplaints about unsuccessful medical treatment do not give rise to a civil rights action." *King v. Kilgore*, 98 F.3d 1338 (5th Cir. 1996) (per curiam) (unpublished) (rejecting a claim for failure to provide medical care where inmate "acknowledged that he received care" but "the care provided did not stop the [asthma] attack"). This fails to state a claim.

Further, Stickel's reliance on medical advice defeats Plaintiffs' claims of deliberate indifference.[3] When Hall approached Stickel a mere thirty minutes after his 12:00 a.m. treatment, medical informed Stickel that Hall was not eligible to return, and Stickel relied on that statement. When Hall approached Stickel after his second breathing treatment, Stickel called medical but did not reach anyone, but knew that based on medical's earlier statement, Hall was not eligible to return to medical at the time. Plaintiffs argue that in those moments, Stickel should have been more persistent with calling medical or called a medical emergency. As a non-medical officer, Stickel knew Hall was receiving medical care and chose to rely on the "advice

---

[3] Courts have rejected claims against non-medical officers relying upon the advice of medical staff. *Pinchback v. Leon-Gomez*, 6:15-CV-805-RWS-KNM, 2017 WL 5632444, at *11 (E.D. Tex. Mar. 7, 2017), *report and recommendation adopted*, 6:15-CV-805-RWS-KNM, 2017 WL 5634636 (E.D. Tex. Mar. 22, 2017) (holding officers were not deliberately indifferent when they "did not ignore [the inmate's] medical needs and instead took affirmative steps to contact medical" and "relied on the medical advice from [the nurse] instead of sending [the inmate] to the infirmary."); *Willcoxson v. Thaler*, CIV.A. H-10-2839, 2012 WL 5943384, at *10 (S.D. Tex. Nov. 27, 2012) (internal citations omitted):

> If the official [like Stickel] is not a trained health care worker, he cannot be found to be deliberately indifferent to an inmate's health unless the official had been advised by a health worker of the danger or unless the danger was so obvious that even a layman could recognize the risk. The officer defendants could not be expected to recognize ailments undetected by health professionals.

given to me through the on-duty nurses[.]" (Doc. 1 ¶ 76). Stickel, as a "non-medical prison official[,] . . . cannot be held deliberately indifferent simply because [he allegedly] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor[.]" *Beard v. Bureau of Prisons,* 4:11-CV-383-Y, 2013 WL 5951160, at *8 n. 50 (N.D. Tex. Nov. 7, 2013). "If a prisoner is under the care of medical experts, a non-medical prison official [like Stickel] will generally be justified in believing that the prisoner is in capable hands." *Id.* (internal quotations and citations omitted). Such is the case at hand.

Plaintiffs' allegation that Stickel failed to seek additional medical care by calling a medical emergency or being more persistent with medical fails to state a claim. Plaintiffs' allegations establish that Stickel sought additional medical care for Hall, and a failure to seek additional care does not establish a claim under these alleged facts. Stickel called medical each time Hall requested to see medical, informed his relieving officer of Hall's condition, and called medical prior to his shift ending to request that Hall see medical earlier than the "4 to 5 hour" time-frame medical had originally recommended. Contrary to Plaintiffs' argument, Stickel did seek additional medical care for Hall.

If medical did not recognize a medical emergency, Stickel could not have been expected to recognize any medical emergency when Hall received three breathing treatments. While Plaintiffs allege that Hall's symptoms included wheezing and trouble breathing, these symptoms were persistent throughout Hall's incarceration. (Doc. 1 ¶ 23). From Stickel's perspective, Hall was under a nurse's care, receiving medical treatment, had access to his inhaler medicine, and his symptoms appeared similar throughout Hall's stay. (*Id.*).

The United States Court of Appeals for the Fifth Circuit has "long held that the decision whether to provide additional treatment is a classic example of a matter for medical judgment,

which fails to give rise to a deliberate-indifference." *Dyer*, 964 F.3d at 381 (rejecting claim that paramedics should have provided additional care). Moreover, courts refrain from holding even trained medical personnel—let alone a non-medical officer like Stickel—liable for a failure to provide additional care where the issue turns on the adequacy of the previously provided medical treatment. *See, e.g., In Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001) (reversing denial of summary judgment by district court, holding psychiatrist not liable for failing to provide medical care where inmate expressed suicidal ideations to the psychiatrist, the psychiatrist returned the inmate to his cell after a five-minute examination, and the inmate committed suicide two and a half hours later). Stickel was aware that Hall had been seen, examined, and diagnosed by medical and had access to his medications. Accordingly, Plaintiffs fail to state a claim for deliberate indifference.

This is not a case where Hall received no treatment during Stickel's shift. After receiving two breathing treatments, Hall waited about forty minutes after his request at 6:15 before being transported to medical to receive a third treatment. This delay does not establish deliberate indifference because the delay did not cause Hall substantial harm. *See, e.g., See Schrader v. Ruggles,* 20-11257, 2021 WL 2843848, at *3 (5th Cir. July 7, 2021) (noting the inmate's failure to explain "how the fact that [the defendant] did not evaluate [the inmate] on January 30th—just hours after [the inmate] was treated by a doctor and cleared for incarceration—caused him substantial harm."); *Baldwin v. Dorsey*, 964 F.3d 320, 327–28 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1379, 209 L. Ed. 2d 123 (2021) ("Three hours' delay in directly responding to a medical need, at least on the facts alleged here, is not the same as never taking responsive action at all.").

Here, Hall successfully received treatment around 4:00 am and returned to his cell. As to Stickel's second encounter with Hall, Stickel called special housing immediately, and then

successfully contacted medical about 45 minutes later. Hall did not succumb to his condition during either of these alleged "delays." The purported harm was not the result of an alleged forty-minute delay in seeing medical prior to being transported to the hospital, where Hall spent another week in the hospital before passing. (Doc. 1 ¶¶18–19, 73–75). There are simply no facts connecting Hall's passing to any purported delay in medical treatment attributable to Stickel. These allegations fail to state a claim for relief.

### 1.     Individual Capacity Claims

Stickel urges that qualified immunity shields him from any claims brought against him in his individual capacity. Qualified immunity is a defense available to government officials in their individual capacities. *Johnston v. City of Hous.*, 14 F.3d 1056, 1059 (5th Cir. 1994). It protects "government officials performing discretionary functions" from liability for civil damages so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978)).

Here, Stickel is entitled to qualified immunity absent a showing by Plaintiffs "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *See Mayfield v. Currie,* 976 F.3d 482, 486 (5th Cir. 2020) (quoting *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)). A district court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Notably, and as the Fifth Circuit has explained, a "defendant's conduct cannot constitute a violation of clearly established law if, on the plaintiff's version of the facts, there is no violation at all." *Johnson v. Johnson*, 385 F.3d 503, 525 (5th Cir. 2004). "This court must

thus initially ask whether the challenged conduct actually presents a violation of federal law [or the Constitution]." *Douglas v. Herrin*, No. SA-11-CV-766-XR, 2012 WL 176223, at *3 (W.D. Tex. Jan. 20, 2012).

Considering this principle, the Court finds Plaintiffs have failed to allege any constitutional violation by Stickel for the reasons stated above. Plaintiffs cite no authority for the proposition that a non-medical officer in Stickel's circumstances is liable for a 45-minute delay in treatment. Here, the inmate had received multiple treatments, was being monitored by medical, and the on-duty nurse informed Stickel that Hall was not eligible to return for additional treatment except once every four hours. Also, in the interim, Stickel ensured that Hall was responsive, conscious, breathing, and always had access to his medication. Case law demonstrates that qualified immunity bars Plaintiffs' claims in such scenarios. *See Westfall v. Luna,* 903 F.3d 534, 551 (5th Cir. 2018) (holding "a reasonable officer could have believed that a delay of no more than 45 minutes for medical treatment, considering the injuries sustained by [the plaintiff], was lawful under our clearly established law").

Plaintiffs have failed to plead facts suggesting Stickel committed any constitutional violation, and thus, Plaintiffs have failed to state a claim for which Stickel is not entitled to qualified immunity. *See McCarty v. Dougherty*, No. 9:17-CV-182, 2021 WL 956225, at *3 (E.D. Tex. Feb. 2, 2021), *report and recommendation adopted*, No. 9:17-CV-182, 2021 WL 949465 (E.D. Tex. Mar. 12, 2021) ("As a result, plaintiff has failed to state a claim, and defendant Dougherty is entitled to qualified immunity with respect to plaintiff's medical claim.").

    **2.**    **Official Capacity Claims**

Plaintiffs also fail to state a claim against Stickel in his official capacity. Plaintiffs' Section 1983 action against Stickel in his official capacity is, in effect, a claim against Midland County. *See Littell v. Valdez*, No. 3:15-CV-2362-D-BN, 2015 WL 10372433, at *3 (N.D. Tex. Nov. 20, 2015). A judgment against a public servant in his official capacity imposes liability on the entity that he represents; thus, a plaintiff's suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Palo ex rel. Est. of Palo v. Dall. Cty..,* No. 3:05–cv–0527–D, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (citing *Monell*, 436 U.S. at 690 n. 55). However, county liability generally requires that (1) an official policy (2) promulgated by the county policymaker (3) was the moving force behind the violation of a constitutional right. *See Monell*, 436 U.S. at 691. Plaintiffs fail to plead facts to establish the elements of the *Monell* test.

For the reasons explained further below, Plaintiffs have failed to allege an official policy promulgated by Midland County that was the moving force behind the alleged violations of the Constitution, and thus, Plaintiffs' official capacity claims against Stickel shall be dismissed. *See Melton v. Hunt Cty.*, No. 3:14-CV-2202-N, 2019 WL 5067907, at *3 (N.D. Tex. Oct. 8, 2019) ("Melton's pleading consists of only conclusory allegations. Melton does not establish that Hunt County's failure to train was the 'moving force' behind the constitutional violation nor does Melton allege any facts that show that Hunt County or Sheriff Meeks acted with deliberate indifference.").

**B.     Plaintiffs' Claims Against Midland County**

Plaintiffs argue Midland County is liable for the following alleged customs or practices: (1) housing inmates too far away from treatment; (2) only calling medical emergencies when an inmate in unconscious or unresponsive; (3) hiring officers with temporary jailer licenses; and

(4) understaffing medical personnel. (Doc. 1). Plaintiffs' allegations fail to show that Midland County's policies or customs were the moving force of the violation or implemented with deliberate indifference.

Plaintiffs assert liability against Midland County based either on the acts or omissions of Stickel or the acts or omissions of Soluta's nurses, rather than the general conditions, practices, rules, or restrictions of pretrial confinement. *See Hare v. City of Corinth, Miss.,* 74 F.3d 633, 644-45 (5th Cir. 1996). The Court rejects any *respondeat superior* argument based on any actions or omissions of Soluta or its employees, the Nurse Defendants. As demonstrated above, Stickel did not violate Hall's rights to medical care.

If no underlying constitutional injury is present, the alleged unconstitutional policy or custom is "quite beside the point" and cannot be a basis for municipal liability. *See, e.g., Gonzales v. City of Kerrville, Tex.,* 205 F.3d 1337 (5th Cir. 1999) (quoting *Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (per curium)). Because Stickel's actions did not violate Hall's rights, it follows that Midland County did not violate Hall's constitutional rights regardless of any alleged custom or policy.

Moreover, the alleged policies were not the moving force of any purported violation. Hall arrived at medical to receive breathing treatments several times regardless of his cell location including final treatment before transportation to the hospital, and therefore, the housing of inmates at a distance from the medical clinic did not contribute to any alleged violation. (Doc. 1 ¶¶ 23, 76). The distance between Hall's cell and medical is a red herring.

Further, Stickel did not wait until Hall was unconscious to seek medical attention. (*Id.* ¶ 76). Therefore, any alleged medical emergency policy stating a medical emergency exists

when an inmate is unconscious is irrelevant because this is not what happened to Hall and is not at issue in this case. (*Id.* ¶ 94).

Lastly, any alleged understaffing of nurses did not cause the alleged violation. The purported understaffing policy was not attributable to Midland County since Soluta "as opposed to Midland County . . . took the lead" in developing healthcare related policies. (*Id.* ¶ 115). Midland County can only be held for conduct "directly attributable" to it. *Piotrowski*, 237 F.3d at 578. It cannot be liable by *respondeat superior* for the policies of Soluta or the actions of Soluta's employees. Plaintiffs fail to show how understaffing, or any other policy promulgated by Soluta, is directly attributable to Midland County.

### 1. Midland County Is Not Liable Under any Theory of Episodic Act or Omission

Plaintiffs must show that Midland County officials, acting with subjective deliberate indifference, violated Hall's constitutional rights and that those actions resulted from a municipal policy or custom adopted with objective indifference to the detainee's constitutional rights. *Sanchez,* 866 F.3d at 280. In an apparent attempt to show deliberate indifference, Plaintiffs argue that Midland County released Hall once he was in the hospital to skirt liability. This is nothing more than an "unwarranted deduction" from the facts, which the Court rejects. *See Emmons v. Painter*, MO:20-CV-00185-DC, 2021 WL 2832977, at *5 (W.D. Tex. May 23, 2021) (The Court "does not strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions.").

Plaintiffs' principal allegation of any alleged "policy or custom" arises from Hall's treatment, that is, from this single case. *See Sanchez*, 866 F.3d at 280. "To be unconstitutional, however, a municipal entity's policy that derives from custom or practice must be so common

and well settled as to constitute a custom that fairly represents municipal policy." *Id*. (internal quotations omitted). "Further, a municipality is almost never liable for an isolated unconstitutional action on the part of an employee." *Id*. (internal alterations and quotations omitted).

Plaintiffs' allegations fail to establish a pattern of similar violations purportedly caused by any custom or practice. Courts require a pattern of similar violations that "occurred for so long or so frequently" that it "transcends the error made in a single case[.]" *Peterson*, 588 F.3d at 850–51. This can only be done by pointing to a county's knowledge of "sufficiently numerous prior incidents" that are both similar and specific, as opposed to only "isolated instances." *Id*; *see, e.g., Fuentes v. Nueces Cty., Tex.,* 689 F. App'x 775, 778 (5th Cir. 2017) (three prior incidents not sufficient); *Jackson v. Valdez,* 3:18-CV-2935-X-BH, 2020 WL 1428775, at *6 (N.D. Tex. Feb. 27, 2020), *report and recommendation adopted,* 3:18-CV-02935-X-BH, 2020 WL 1339923 (N.D. Tex. Mar. 23, 2020) (four prior incidents not sufficient). Plaintiffs allege none.

Moreover, Hall's failure to have CPR or first aid training did not contribute to any alleged violation. Thirty minutes after Hall received his 12:00 a.m. treatment on July 10, 2019, medical informed Stickel that Hall was not eligible to return for four to five hours. After Hall requested to see medical a third time following his second breathing treatment, Stickel ensured that Hall was seen by medical within the hour despite the prior "4 to 5 hour" treatment schedule. Even discounting that Stickel had six-weeks of on-the-job training, courts in this circuit have dismissed failure to train claims based on similar allegations. *Rowland v. Sw. Corr., LLC*, 420CV00847ALMCAN, 2021 WL 4206409, at *6 (E.D. Tex. Aug. 17, 2021), *report and recommendation adopted*, 4:20-CV-847, 2021 WL 4191433 (E.D. Tex. Sept. 15, 2021) (holding

the "sprinkling" of "temporary licenses" to be "insufficient to plead a claim for failure to train"). Lastly, Plaintiffs' pleadings fail to show a causal link between the alleged lack of training or temporary licenses and the incident.

### 2. Midland County Is Not Liable Under any Ratification Theory

The Court rejects Plaintiffs' argument that Midland County is liable for the alleged acts or omissions of the Nurse Defendants. "Contrary to plaintiffs' theory, a plaintiff cannot bootstrap government entity liability from the individual failures of employees because there is no *respondeat superior* liability under Section 1983." *Sanchez*, 866 F.3d at 281.

Plaintiffs' allegations fail to show any pattern of past, similar violations by Soluta, the defendant nurses, or any other Soluta employee that would have put Midland County on notice that Soluta and its employees were allegedly providing inadequate medical services to its inmates. *See Yara v. Perryton Indep. Sch. Dist.*, 560 Fed. Appx. 356, 358–60 (5th Cir. 2014). While Plaintiffs direct the Court to six previous custodial deaths at the Midland County jail occurring over a fifteen-year period, none of the incidents are similar this incident. (Doc. 1 ¶¶ 95–99). This fails to state a claim.

Plaintiffs' Complaint contains no allegations that (1) there were prior reports of Soluta nurses allegedly falsifying medical records; (2) Midland County policymakers knew the details of those prior reports but did nothing in response; and (3) the Midland County policymakers were aware of the details of the allegations at issue here (falsification of medical records by non-employee jail nurses) but, again, failed to take any corrective action. The facts Plaintiffs certified as having evidentiary support fail to include any element to support a ratification claim. Thus, *Sanchez v. Young County, Tex.*, 956 F.3d 785 (5th Cir. 2020) does not impose liability.

Lastly, the Nurse Defendants are not alleged to be Midland County employees and there is no allegation that any Midland County employee participated in or approved the alleged conduct, much less a policymaker. Thus, the Court does not find that Midland County ratified any conduct or omission of Soluta. Accordingly, the single-incident exception of *Grandstaff v. City of Borger, Tex.,* 767 F.2d 161 (5th Cir. 1985) is inapplicable.

### 3.    Midland County Is Not Liable Under any Delegation Theory

Plaintiffs incorrectly claim that Midland County and Soluta are jointly responsible for the actions or omissions of the Defendant Nurses because Midland County delegated policymaking authority to Soluta regarding health care. Plaintiffs' argument is nothing more than a recast application of *respondeat superior*. Again, Plaintiffs do not claim the alleged falsification of inmate medical records was an official policy of Soluta, nor do Plaintiffs cite to prior similar events to establish a custom. Instead, Plaintiffs rely on this single incident (the Soluta nurses' treatment of Hall) to support the claim.

Midland County hired Soluta to provide health care services, not to falsify inmates' medical records. Plaintiffs' complaint fails to show that Midland County delegated policymaking authority. A plaintiff cannot merely rely upon the existence of a contract and a county's "non-delegable" duty to prove delegation. *See Rodriguez v. S. Health Partners, Inc.,* 3:20-CV-0045-D, 2020 WL 2928486, at *8 (N.D. Tex. June 3, 2020). Plaintiffs' argument in this regard fails.

### 4.    Midland County Is Not Liable Based on a Conditions of Confinement Theory

Finally, Plaintiffs' pleadings fail to show that Midland County is liable under any conditions of confinement theory. To prevail on a conditions-of-confinement theory, Plaintiffs must show a "condition—a 'rule,' a 'restriction,' an 'identifiable intended condition or practice,'

or 'sufficiently extended or pervasive' 'acts or omissions' of jail officials—that is not reasonably related to a legitimate government objective and that caused the constitutional violation." *Sanchez*, 956 F.3d at 791. Although Plaintiffs cite several alleged "conditions"—such as alleged understaffing, Hall's housing, and calling medical emergencies only when an inmate is unresponsive—none of these alleged "conditions" caused the purported constitutional violation. (Doc. 1 ¶¶ 90–94).

Plaintiffs' do not claim that a condition of confinement at the Midland County jail caused Hall's harm. Instead, Plaintiffs claim that the Nurse Defendants' alleged decision to falsify medical records denied Hall the care he needed, which led to his passing. Thus, Plaintiffs' claims against Midland County shall be dismissed.

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Midland County Defendants' Motion to Dismiss (Doc. 31).

It is therefore **ORDERED** that Plaintiffs' claims against Defendant Daniel T. Stickel in his official capacity and Midland County, Texas are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiffs' claims against Defendant Daniel T. Stickel in his individual capacity are **DISMISSED WITHOUT PREJUDICE**.

It is finally **ORDERED** that Midland County Defendants' Motion for Protection and Stay of All Discovery is **DENIED** as moot. (Doc. 43).

It is so **ORDERED**.

SIGNED this 2nd day of April, 2022.

_____
DAVID  COUNTS
UNITED STATES DISTRICT JUDGE